## THIEDE *v.* UTAH TERRITORY.

### ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 688.  Submitted October 21, 1895. — Decided November 11, 1895.

It is not error in Utah to proceed to trial of a person accused of murder before the filing of the transcript of the preliminary examination had under the Compiled Laws of Utah, § 4883.

The provision in Rev. Stat. § 1033, that the defendant in a capital case is entitled to have delivered to him at least two entire days before the trial a copy of the indictment and a list of the witnesses to be produced on the trial does not control the practice and procedure of the local courts of Utah.

In Utah a juror in a capital case who states on his *voir dire* that he had read an account of the homicide in the newspaper and formed some impression touching it, but that he could lay that aside and try the case fairly and impartially on the evidence, is not subject to challenge for cause.

A juror is not subject to challenge for cause in a criminal proceeding

Opinion of the Court.

against a saloon keeper for homicide, who states on his *voir dire*, that he has a prejudice against the business of saloon keeping, but none against the defendant, whom he does not know.

When the relations between a defendant, charged with murdering his wife and the wife are to be settled, not by direct and positive but by circumstantial evidence, any circumstance which tends to throw light thereon may be fairly admitted in evidence.

The order in which testimony shall be admitted is largely within the discretion of the trial court.

When the court rules correctly that certain matters are not proper subjects of cross-examination, and notifies the questioning party that he can recall the witness and examine him fully in reference to those matters, and he fails to recall him or introduce testimony thereon, he has no grounds of complaint.

The credibility of a female witness cannot be impeached by asking her whether she has not had some difficulty with her husband.

When the defendant in a criminal case consents that a member of the jury shall act as interpreter for a witness speaking a foreign language, none of his rights are prejudiced by the juryman's so doing.

An exception in bulk to a refusal to charge several propositions, separately numbered but offered in bulk, cannot be maintained if any one proposition be unsound.

Deliberation and premeditation to commit crime need not exist in the criminal's mind for any fixed period before the commission of the act.

Exceptions to the ruling of the court in a jury trial, tendered twelve days after the verdict was rendered, are too late.

THE case is stated in the opinion.

No appearance for plaintiff in error.

*Mr. Assistant Attorney General Dickinson* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

On November 5, 1894, in the District Court of Salt Lake County, Utah Territory, Charles Thiede, the plaintiff in error, was found guilty of the crime of murder, and sentenced to be hanged. On March 16, 1895, this judgment was affirmed by the Supreme Court of the Territory, whereupon he sued out this writ of error.

The record of the proceedings in the trial court is volumi-

nous, consisting of over four hundred printed pages, and we have not been assisted in our examination by either brief or argument on the part of counsel for plaintiff in error. We have, however, carefully examined the record, with the several assignments of error, and now state our conclusions thereon.

The first alleged error is in overruling the defendant's objection to going to trial on October 10, 1894, on the ground that the evidence taken at the preliminary hearing had not been transcribed, certified, and filed with the clerk of the District Court, as provided by law. The homicide was charged to have been committed on April 30, 1894. The indictment was returned on September 24. On September 28 the defendant was arraigned and pleaded "not guilty." On October 2 the trial was fixed by order of the court for October 10, and on that day when the case was called for trial the objection heretofore referred to was made and overruled. It was admitted that a preliminary examination had been had, that the testimony before the justice of the peace had been taken down in shorthand by one Fred. McGurrin, under direction of the justice; that about ten days before the trial said McGurrin was asked by the prosecuting attorney to transcribe the same, and that he declined to do so. McGurrin stated in open court that he had in a prior case transcribed the evidence and been refused payment therefor both by the county and the Territory, and upon such refusal had brought suit against both, and in such suits it had been adjudged that he had no cause of action against either, and that the only reason he failed to transcribe the testimony was that he would not be paid for the same.

By section 4883, Compiled Laws of Utah, 1888, in cases of homicide the testimony taken upon the preliminary examination is required to be reduced to writing as a deposition by the magistrate, or under his direction. If taken down in shorthand it must be transcribed into longhand by the reporter, within ten days after the close of the examination, and by him certified and filed with the clerk of the District Court. The fees for this are to be paid out of the county treasury. The defendant did not ask for a continuance, but simply objected to going to trial because this transcript of the testimony had

not been transcribed, certified, and filed. As the time within which this was by the statute required to be done had already passed, the objection, if sustained, would either have been fatal to the entire proceeding, and prevented any trial under that indictment, or at least would have caused a delay of the trial until such time as, by suitable proceedings, the filing of the transcript of the testimony could have been completed, and many things might interfere to postpone or prevent the obtaining of such transcript.

Before a ruling is made which necessarily works out such a result it should appear either that the statute gives an absolute right to the defendant to insist upon this preliminary filing, or else that the want of it would cause material injury to his defence. Neither can be affirmed. A preliminary examination is not indispensable to the finding of an indictment or a trial thereon; and if the examination itself is not indispensable it would seem to follow that no step taken in the course or as a part of it can be. Further, the statute does not provide that this transcript shall be filed at any time before the finding of the indictment or before the trial, but only within ten days after the examination. There is no prohibition against finding an indictment or bringing on of the trial at any time after the commission of the offence. The statute nowhere expressly places the filing of this transcript as something necessarily happening intermediate the examination and the trial, nor does it make the latter depend upon such filing or even upon a preliminary examination.

Further, supposing the transcript is filed, of what avail is it to the defendant? Simply this, that, as such a transcript is by the statute made *prima facie* a correct statement of the testimony and proceedings at the preliminary examination, if the defendant wishes to impeach any witness by proof of contradictory testimony at such examination, it is convenient to have on file that which is *prima facie* such testimony. But if the defendant can secure the same evidence without the transcript, the lack of it is no material injury; and that he could do so in this case appears from the fact that the stenographer was present in the court room, and his attendance could

have been secured by a subpœna, and he compelled under oath to develop from his notes any testimony taken on the preliminary examination. We conclude, therefore, that the law does not forbid a trial before the filing of this transcript, nor was, in this case, the failure so to file an error working substantial injury to the rights of the defendant.

The second matter presented is, that the court permitted certain witnesses to testify in the case over the objection of the defendant, when their names were not endorsed on the indictment nor included in a list furnished the defendant by the prosecuting attorney; and defendant had no knowledge that they would be called to testify until the trial had begun.

It appears that on October 2, when the case was set for trial, the defendant's counsel, in open court, requested the district attorney to furnish them before the trial began with the names of all witnesses to be called by the prosecution on the trial, stating that they did not claim it as a matter of right but of favor, and thought it was only fair to the defendant that he should be so advised. Thereupon the district attorney stated that he was unaware of any witnesses other than those whose names were on the back of the indictment, excepting four whom he then named, but promised that if he ascertained there were any others he would give information in regard to them as soon as received; on the 8th of October he furnished the defendant with a list of other witnesses; on the 11th, the day after the trial commenced, he notified the defendant of still another witness, who was in fact not called until the 15th, and four days before the defence rested.

By § 1033 Rev. Stat., the defendant in a capital case is entitled to have delivered to him at least two entire days before the trial a copy of the indictment and a list of the witnesses to be produced on the trial. *Logan* v. *United States*, 144 U. S. 263, 304. But this section applies to the Circuit and District Courts of the United States, and does not control the practice and procedure of the courts of Utah, which are regulated by the statutes of that Territory. This question was fully considered in *Hornbuckle* v. *Toombs*, 18 Wall. 648, and it was held, overruling prior decisions, that the pleadings and procedure of

the territorial courts, as well as their respective jurisdictions, were intended by Congress to be left to the legislative action of the territorial assemblies and to the regulations which might be adopted by the courts themselves. See also *Clinton* v. *Englebrecht,* 13 Wall. 434, in which it was held that the selection of jurors in territorial courts was to be made in conformity to the territorial statutes; *Good* v. *Martin,* 95 U. S. 90, in which a like ruling was made as to the competency of witnesses; *Reynolds* v. *United States,* 98 U. S. 145, where the same rule was applied to the impanelling of grand jurors and the number of jurors; also *Miles* v. *United States,* 103 U. S. 304, a case coming from the Territory of Utah, in which the same doctrine was announced with regard to the mode of challenging petit jurors. *Page* v. *Burnstine,* 102 U. S. 664, 668.

Referring, therefore, to the territorial statutes, there is none which directs that a list of the witnesses be furnished to the defendant. Section 4925, Comp. Laws Utah, requires that the names of witnesses examined before the grand jury be endorsed on the indictment before it is presented. There is no pretence that this direction was not complied with. In the absence of some statutory provision there is no irregularity in calling a witness whose name does not appear on the back of the indictment or has not been furnished to the defendant before the trial. The action of counsel for defendant in asking that as a favor the names be furnished them indicates their understanding of the extent of defendant's right, and, so far as appears, the district attorney fully complied with this request and furnished the names as fast as he was advised that they would be called. There is no suggestion that the defendant was surprised by the calling of any witness or the testimony that he gave. This allegation of error, therefore, is without foundation.

The third assignment is that the court erred in overruling defendant's challenges for cause directed against four jurors on the ground that on the *voir dire* they showed themselves incompetent to serve. These jurors testified substantially that at the time of the homicide they had read accounts thereof in the newspaper, and that some impression had been formed in

their minds from such reading, but each stated that he could lay aside any such impression and could try the case fairly and impartially upon the evidence presented. Section 5024, Compiled Laws of Utah, reads that " no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals, or common notoriety: *Provided*, It appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters submitted to him."

The testimony of these jurors clearly placed them within the terms of this statute, and there was no error in overruling the challenges. *Reynolds* v. *United States*, 98 U. S. 145; *Hopt* v. *Utah*, 120 U. S. 430; *Spies* v. *Illinois*, 123 U. S. 131; *Connors* v. *United States*, 158 U. S. 408.

The defendant was a saloon keeper, and one of the jurors also said that he had a prejudice against that business; that he did not know the defendant and had no prejudice against him individually, but simply against the business of saloon keeping; that such prejudice would not influence him in any way in passing upon the guilt or innocence of the defendant, but that his occupation, like that of any other witness, might affect the credit he would give to his testimony. But the charge against the defendant, the matter to be tried, had no reference to the occupation in which he was engaged, and, therefore, a prejudice against such occupation is entirely immaterial. In *Spies* v. *Illinois*, 123 U. S. 131, a juror testified to a decided prejudice against socialists and communists, as the defendants were said to be, but as the charge to be tried was murder, and there was no prejudice against the defendants as individuals, he was accepted and sworn as a juror. In the case at bar the juror was, however, excused by the defendant before all his peremptory challenges were exhausted. *Hopt* v. *Utah*, 120 U. S. 430; *Hayes* v. *Missouri*, 120 U. S. 68, 71.

A fourth assignment is that the court erred in admitting irrelevant, incompetent, and immaterial testimony. In order to appreciate this assignment of error it becomes necessary to

state briefly the circumstances of the homicide. The defendant owned a brewery, and adjoining it kept a saloon; he had for some time prior to the homicide been sleeping in the saloon, while his wife and their child — a girl of about nine years of age — slept at the dwelling-house a short distance away. Somewhere about one o'clock in the morning of Tuesday, May 1, 1894, the defendant awakened one Jacob Lauenberger, and informed him that he had found his wife lying dead, with her throat cut. Upon examination it appeared that the head had been almost severed from the body by a wound made with some sharp instrument, probably not a pocket-knife or a razor, but some large knife or similar instrument. The deceased was lying within three to five feet of the southeast corner of the saloon. About thirty feet further east was a pool of blood, with evidences of a struggle, and from that point to where the body lay there were marks of blood. The defendant was in or near the saloon during the night until he went with the witness Lauenberger for a physician, and the saloon was lighted during the whole of the night. There was blood upon his hands and upon his clothing. When he awakened Lauenberger, and thereafter when going for a physician, and after his return, he manifested grief at the loss of his wife. There was evidence of ill treatment by the defendant of his wife for a number of years, though this was denied by him, and his denial sustained by other testimony. On the Sunday evening preceding the murder the defendant and his wife had quarrelled. The witness Lauenberger called them into his house, and, according to his testimony and that of his wife, the defendant while there slapped his wife in the face, and ordered her to go home, and she refused to go, saying that if she went home the defendant would kill her that night. The last time the deceased was seen by any witness other than the defendant was about ten o'clock Monday evening, when she was sitting outside the defendant's saloon. The night was dark.

Now the most of the testimony objected to was introduced for the purpose of showing ill treatment by defendant of deceased, and a state of bitter feeling between them. This, of course, bears on the question of motive, and tends to rebut the

presumed improbability of a husband murdering his wife. The witnesses testified to hearing the deceased scream at several times; to seeing her with black eyes and a bruised face; to her eyes looking red; to her crying on several occasions, and appearing alarmed and scared, and to bruises and discolorations of her body. The objection was that these witnesses did not connect the defendant with these appearances, or testify that he was the cause of them. It is true these matters do not constitute direct evidence of ill treatment or a long-continued quarrel, but they are circumstances which, taken in connection with the testimony of what was seen and heard passing between the defendant and his wife, were fairly to be considered by the jury in determining the truth in respect thereto. Whether the relations between the defendant and his wife were friendly or the reverse, was to be settled, not by direct or positive but by circumstantial evidence, and any circumstance which tended to throw light thereon might fairly be admitted in evidence before the jury. *Alexander* v. *United States*, 138 U. S. 353; *Holmes* v. *Goldsmith*, 147 U. S. 150; *Moore* v. *United States*, 150 U. S. 57. In the second of these cases, page 164, this court observed: "As has been frequently said, great latitude is allowed in the reception of circumstantial evidence, the aid of which is constantly required, and, therefore, where direct evidence of the fact is wanting, the more the jury can see of the surrounding facts and circumstances the more correct their judgment is likely to be."

Another witness, after stating that he knew the defendant prior to the homicide, was permitted to testify that he was "a strong, powerful man." While this was not very material, as the defendant was in the presence of the jury, yet, in view of the medical testimony that the wound must have been caused by a powerful blow, we cannot say that it was either incompetent or immaterial, or that the court erred in admitting it.

There was testimony that after the defendant had returned with Lauenberger and the physician to his saloon a stranger came in and bought some whiskey. This was before daylight on the morning of Tuesday. The physician testified that he

noticed this stranger carefully, and saw him the next day, and that there were no blood stains on him or his clothing. The latter testimony was objected to, yet, as there was evidence tending to show that there must have been something of a struggle between the deceased and her murderer, with the probability that in such struggle blood would have gotten on to the person and the clothing of the latter, we cannot say that the testimony was absolutely immaterial; at any rate, we cannot see how it in any manner tended to prejudice the defendant.

We may remark in regard to other alleged errors in the introduction of testimony, that the order in which testimony shall be admitted is largely within the discretion of the trial court; that when the court rules correctly that certain matters are not proper subjects of cross-examination, and at the same time notifies the defendant that he can recall the witness and examine him fully in reference to those matters, and the defendant fails to recall the witness or introduce his testimony thereon, it is difficult to see any ground of complaint; and further, that the credibility of a witness cannot be impeached by asking her whether she has not had some difficulty with her husband.

Another assignment of error is that one of the jurors was permitted to act as interpreter. The record discloses that when Lauenberger was called as a witness one Fritz Lomax was sworn as interpreter. After the examination had proceeded a little while defendant's counsel suggested that the interpreter was not correctly translating the answers of the witness; that the defendant had so informed him, which statement was corroborated by one of the jurors. This juror was asked if he fully understood the peculiar dialect of the German language which the witness spoke, and replied that he did, whereupon, with the consent of defendant, he was sworn to act as an interpreter, and the subsequent examination of the witness was carried on through him. We cannot see that in this any substantial right of the defendant was prejudiced. The juror certainly heard all that the witness stated, and was, therefore, fully prepared to act with the

other jurors in considering his testimony, and as his interpretation of the witness's testimony was with the consent of the defendant, the latter cannot now question its propriety.

The remaining assignments of error relate to the matter of instructions. It appears that at the close of the testimony the defendant presented a body of instructions in twenty-two paragraphs, and asked the court to give them to the jury. They were marked "refused as a whole except as given," and the only exception to such refusal was in this language, "the defendant excepts to the refusal of the court to give the instructions requested by the defendant, being numbered 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, and 21." Such an exception is insufficient to compel an examination of each separate instruction. It is enough that any one of the series is erroneous. In *Beaver* v. *Taylor*, 93 U. S. 46, 54, this precise question was presented, and the court said : "The entire series of propositions was presented as one request ; and, if any one proposition was unsound, an exception to a refusal to charge the series cannot be maintained." See also *Indianapolis & St. Louis Railroad* v. *Horst*, 93 U. S. 291, 295 ; *Block* v. *Darling*, 140 U. S. 234 ; *Bogk* v. *Gassert*, 149 U. S. 17, 26 ; *Holder* v. *United States*, 150 U. S. 91 ; *Hickory* v. *United States*, 151 U. S. 303, 316 ; *Allis* v. *United States*, 155 U. S. 117 ; *Newport News &c. Valley Co.* v. *Pace*, 158 U. S. 36.

An examination of the twenty-two instructions shows that they are mainly directed to the matters of reasonable doubt, presumption of innocence, circumstantial testimony, and confessions, in respect to which the court, while not using the language of counsel, substantially expressed the same propositions in its charge. Of course, it was under no obligation to use the precise language adopted by counsel, and if it fully covered the ground indicated by the requests it is sufficient. One of the requests, to wit, No. 21, reads as follows :

"The jury are instructed that marital discord and quarrels are relevant to prove motive in cases of marital homicide, but, as instances of such quarrels are very numerous, generally expending their force in words, such proof is entitled to little weight, unless connected in some way with the fatal wound."

This, if true under any circumstances, was obviously improper as applied to the facts of this case, for, as there was no evidence of what took place between the deceased and her murderer at the night of the homicide, it might carry the impression to the jury that they were to ignore all the testimony of marital discord and quarrels because there was no express connection shown between such quarrels and the homicide.

It also appeared that defendant's counsel, at the close of the charge, excepted as follows:

"Further, the defendant excepts to the giving of the instructions to the jury on the definition of the word 'malice' and application to this case, as being misleading, confusing, and not correctly stating the law as applicable to this case and tending to influence the jury to find a verdict not justified by the evidence in this case.

"The defendant excepts to the giving of the instruction of the court to the jury on the question of murder in the second degree, as not being justified by the evidence and tending to mislead and confuse the jury and cause them to render a verdict not sustained by the evidence in this case.

"The defendant excepts to the instruction of the court to the jury in defining deliberation, that the same does not properly and legally define the meaning of the words used in the indictment in this case.

"The defendant excepts to the instruction of the court to the jury in the definition and meaning of premeditation, as misleading and not correct as charged in the indictment in this case."

It may well be doubted whether these exceptions are sufficiently specific to call the attention of the court to the precise matters complained of. *Beaver* v. *Taylor*, 93 U. S. 46; 55, in which this court observes: "It is not the duty of a judge at the Circuit Court, or of an appellate court, to analyze and compare the requests and the charge, to discover what are the portions thus excepted to. One object of an exception is to call the attention of the circuit judge to the precise point as to which it is supposed he has erred, that he may then and there

consider it, and give new and different instructions to the jury, if in his judgment it should be proper to do so." *Allis* v. *United States,* 155 U. S. 117; *Newport News &c. Valley Co.* v. *Pace,* 158 U. S. 36. But if they are, we find nothing in the charge of the court in respect to those matters which can be deemed erroneous. This was the definition of malice: " The term 'malice' denotes a wicked intention of the mind; an act done with a depraved mind attendant with circumstances which indicate a wilful disregard of the rights or safety of others indicates malice. Malice aforethought is such wicked intention of the mind previously entertained." Evidently, there is nothing in this of which the defendant can complain. 1 Bishop's New Criminal Law, § 429. Following this definition of malice the court in its charge referred to the divisions of express and implied malice, and discussed them at some length, but we find nothing in such discussion which is not supported by accepted definitions, or which in any manner would tend to the prejudice of defendant's rights.

With reference to the giving of an instruction on the question of murder in the second degree, the accuracy of the instruction is not questioned, and that it was proper to give one has been already determined by this court. In *Hopt* v. *Utah,* 110 U. S. 574, 582, it was said : " It was competent for the judge, under the statutes of Utah, to state to the jury ' all matters of law necessary for their information,' and, consequently, to inform them what those statutes defined as murder in the first degree and murder in the second degree. Laws of Utah, 1878, p. 120 ; Code of Crim. Pro. secs. 283, 284."

As to the other matters, we do not find in the charge any separate definition of the terms " deliberation " or " premeditation." Probably counsel referred to the statement that such deliberation and premeditation need not exist for any fixed period of time ; that it is enough that they were formed before the act. This is the accepted law. 2 Bishop's New Crim. Law, § 728.

Again, the verdict was returned on October 21. On November 2 counsel for defendant came into court, and sought to save other exceptions to the charge. The court noted those

exceptions but declined to make any ruling on them. Obviously, they were too late. *Mich. Ins. Bank* v. *Eldred*, 143 U. S. 293, 298.

These are all the errors assigned. We find nothing in the record of which the defendant has any just complaint, and, therefore, the judgment is

*Affirmed.*