## CORBUS v. LEONHARDT.

### (Circuit Court of Appeals, Ninth Circuit. February 3, 1902.)

### No. 709.

1. WITNESSES—COMPETENCY—TESTIMONY AGAINST DECEDENTS—TERRITORIAL COURTS.

Rev. St. U. S. § 858, providing that in actions by or against executors, administrators, or guardians neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, etc., has no application to territorial courts.

2. SAME—LAWS OF OREGON—APPLICABILITY TO ALASKA.

Act May 17, 1884, "providing a civil government for Alaska" (23 Stat. 24), by section 3 provides for the establishment of "a district court for said district, with the civil and criminal jurisdiction of district courts of the United States." Section 7 declares "that the general laws of the state of Oregon now in force are hereby declared to be the law in said district, so far as the same may be applicable and not in conflict with the provisions of this act or the laws of the United States." The laws of Oregon at the time made no restrictions excluding witnesses from testifying in any cause (1 Hill's Ann. Laws Or. § 710). *Held*, that such laws were in force in Alaska, and parties were not restricted from testifying with relation to transactions with or statements of decedents.

3. SAME—WHAT TESTIMONY EXCLUDED.

In an action by a physician against an administrator for services rendered his decedent during the latter's lifetime, plaintiff's testimony as to his services, the value thereof, and that no part thereof had been paid, did not relate to any transaction with or statement of the decedent, and was admissible.

4. PHYSICIANS—ACTIONS FOR SERVICES—DEFENSES.

Defendant's evidence tended to show that decedent was employed by a corporation, and was a subscriber to a hospital, and that a verbal contract existed between the hospital and the company that all the latter's employés, by paying $1 per month, should be entitled to medical attendance at the hospital free. There was conflict in the evidence as to whether subscribers were entitled to treatment at their homes, where decedent's treatment was received. Plaintiff testified that he never agreed to attend subscribers away from the hospital, which was not denied. *Held* not to sustain the defense that plaintiff could not recover because the services were rendered under contract with the hospital.

5. SAME—RECEIPTS—MISLEADING INSTRUCTIONS.

A receipt given decedent by a physician recited: "To attending Mrs. D. [decedent's wife] and baby, $25.00; ferry charges, $34.00. Rec'd payment in full to date." In an action by the physician for services rendered decedent himself, plaintiff admitted that he had been paid for his services in attending the wife and baby. There was direct conflict as to whether at the time of its payment the physician had not stated that it was in full for all charges for treating decedent, as well as his wife and baby. *Held*, that a charge that defendant had introduced in evidence a receipt reciting the payment in full to date, and that the receipt was prima facie evidence that all indebtedness was paid, etc., was properly refused.

6. REQUESTED INSTRUCTIONS.

A requested charge is properly refused where covered by charges given.

In Error to the District Court of the United States for Division No. 1 of the District of Alaska.

This action was brought October 14, 1898, by the defendant in error to recover from Robert Duncan, Jr., the sum of $500 for medical services rendered during the months of January, February, and March, 1895,—in all, 100 visits, from Juneau to Douglas Island, Alaska. Mr. Duncan died April 14, 1899. The plaintiff in error was duly appointed administrator of the estate of Robert Duncan, Jr., November 2, 1899, and was afterward substituted as the defendant in said action. In his answer he admitted the rendition of the services, but denied they were worth the sum of $500, or any other sum; alleged that Robert Duncan, Jr., in his lifetime, paid plaintiff in full for all services rendered; and further alleged that all services rendered Duncan "were rendered in behalf of the St. Ann Hospital." The case was tried before a jury, and resulted in a verdict in favor of the defendant in error in the sum of $500. Judgment was duly entered for said sum.

There are but two assignments of error, viz.: "(1) The court erred in admitting in evidence to the jury the following testimony of the plaintiff, S. C. Leonhardt, to wit: 'My name is Samuel C. Leonhardt. I reside at Juneau, Alaska, and am a physician and surgeon. I knew the defendant, Robert Duncan, Jr., in his lifetime. I performed services for him in his lifetime. I was sent for, as a private case, and attended Mr. Duncan. I also attended Mrs. Duncan and the baby. I attended Mrs. Duncan during her confinement, and, for some two months after, for milk leg. The baby was what was called "stillborn," and I brought it to life. In January, 1895, I made forty visits to Mr. Duncan; in February I made thirty-five visits; and twenty-five in March. The usual charge for such visits was five dollars each, and that is what I charged, making a total of $500. Mr. Duncan never paid me for the services rendered. I made a demand on him to pay, and he didn't make any satisfactory answer. He never in his lifetime refused to pay, or denied the bill. He promised to pay it. He told me, just as soon as he was strong enough, and able to think the matter over, he would pay me handsomely for the services I had rendered him, and for me to make out a bill for Mrs. Duncan's confinement and the ferry charges, and he would pay that at once, and just as soon as he was able to be around he would attend to his part of it. He said that he appreciated the fact, or asked me to make out a bill for the whole amount, and I told him I would leave it to his own judgment as to the services for him; and he stated he appreciated the fact that I refused to make out a bill at this time to him for the services. On the 26th of March, 1895, he asked me for his bill. I said: "I rather not make out a bill to you; rather leave it to your own judgment to pay what you think best." And he said he appreciated and knew what position I was in, having just come up here, * * * and he said then, "What do you usually charge in such cases?" I said, "Twenty-five dollars;" and he then said, "Well, you make out your bill for twenty-five dollars, confinement charges for Mrs. Duncan, and the ferry charges to here, for this time, and as soon as I get well I will pay you for myself." And he said, "We can never suitably remunerate you in money for this service." He expressed himself as fully satisfied,—highly satisfied.' (2) The court erred in refusing to give, at the request of the defendant, the following instruction, to wit: 'Gentlemen of the jury, the defendant has introduced in evidence before you a receipt executed to Robert Duncan during his lifetime by the plaintiff, Dr. Leonhardt, date, March 26, 1895, reciting the receipt of payment in full to date. This receipt is prima facie evidence that all indebtedness of Robert Duncan to Dr. Leonhardt was paid; that nothing more was due from Robert Duncan on account of anything transpiring prior to March 26, 1895; and, before you can find for the plaintiff in this case, you must find that the presumption arising from the receipt is met and overcome by the preponderance of the evidence.' "

Section 858, Rev. St., referred to in the opinion of the court, reads as follows: "In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried: provided, that in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the

other, as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."

Maloney & Cobb, for plaintiff in error.

Lorenzo S. B. Sawyer, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts as above). 1. The objections presented by the first assignment of error are based upon the ground that the testimony of Dr. Leonhardt comes within the provisions of section 858, Rev. St., and that by this section he was not a competent witness to any transactions and conversations between himself and defendant's intestate. We are of opinion that the court did not err in admitting the testimony objected to. It is perhaps true, as claimed by the plaintiff in error, that there is no decision directly in point, but the decisions bearing upon the general question lead us to the conclusion that section 858 does not apply to territorial courts. Good v. Martin, 95 U. S. 90, 98, 24 L. Ed. 341; McAllister v. U. S., 141 U. S. 174, 11 Sup. Ct. 949, 45 L. Ed. 693; Thiede v. Utah, 159 U. S. 510, 515, 16 Sup. Ct. 62, 40 L. Ed. 237; The Coquitlam v. U. S., 163 U. S. 346, 351, 16 Sup. Ct. 1117, 41 L. Ed. 184; Jackson v. U. S., 42 C. C. A. 452, 102 Fed. 473, 479.

In Good v. Martin, supra, the court said:

"Territorial courts are not courts of the United States, within the meaning of the constitution, as appears by all the authorities. Clinton v. Englebrect, 13 Wall. 434, 20 L. Ed. 659; Hornbuckle v. Toombs, 18 Wall. 648, 21 L. Ed. 966. A witness in civil cases cannot be excluded in the courts of the United States because he or she is a party to or interested in the issue tried, but the provision has no application in the courts of a territory where a different rule prevails."

Page v. Burnstine, 102 U. S. 664, 26 L. Ed. 268, cited by the plaintiff in error, is not in opposition to these views. That decision was rendered under certain provisions of the act providing a government for the District of Columbia, which are not applicable to Alaska. In the course of the opinion the court said:

"These views do not at all conflict with the previous decisions of this court, holding that certain provisions of the General Statutes of the United States relating to the practice and proceedings in the 'courts of the United States' are locally inapplicable to territorial courts."

By the provisions of section 3 of the "Act providing a civil government for Alaska," approved May 17, 1884 (23 Stat. 24), there was "established a district court for said district, with the civil and criminal jurisdiction of district courts of the United States." By section 7 of this act it was provided "that the general laws of the state of Oregon now in force are hereby declared to be the law in said district, so far as the same may be applicable and not in conflict with the pro-

visions of this act or the laws of the United States." At the time this law was enacted there were no restrictions excluding witnesses from testifying in any case. 1 Hill's Ann. Laws Or. § 710. These laws were in force in Alaska at the time this suit was brought and at the time of Robert Duncan's death, and were applicable to the proceedings had in this case.

In so far as this case is concerned, there was ample evidence to sustain the verdict in the testimony of Dr. Leonhardt, independent of his testimony relating to "any transaction with or statement of the intestate." The testimony as to his services, the value thereof, and that no part thereof had been paid, was clearly admissible. In Cowdery v. McChesney, 124 Cal. 363, 366, 57 Pac. 221, the plaintiff was asked questions as follows:

"Q. Has anything been paid to you since his death on account of any services rendered by you to him during his lifetime? * * * Q. If any balance upon any account was due to you upon the death of George M. Kasson, does that balance still remain unpaid?"

. Objections were made to both questions on the ground that the plaintiff was not a competent witness to testify to such facts, under the provision of section 1880 of the Code of Civil Procedure, which is substantially the same as section 858, Rev. St. The court sustained the objection, to which ruling of the court plaintiff excepted. The supreme court said:

"The inquiry contained in these questions did not relate to anything that occurred before the death of deceased, and does not fall under the inhibition of section 1880 of the Code of Civil Procedure. The ruling of the court was therefore erroneous."

In relation to these matters there was no conflict. In fact, they stand admitted by the evidence contained in the record.

The defense interposed by plaintiff in error, that Dr. Leonhardt was not entitled to recover anything for medical services rendered Robert Duncan, Jr., because the services were performed under a contract with St. Ann's Hospital, is not sustained by the evidence. The testimony on behalf of the plaintiff in error tended to show that Duncan was in the employ of the Alaska-Treadwell Gold Mining Company, and was a subscriber to St. Ann's Hospital, and that a verbal contract existed between the mining company and the hospital that all of its employés, by paying $1 per month to the hospital, were entitled to medical attendance at the hospital free. There is a conflict in the evidence as to whether the subscribers were entitled to treatment at their homes. Dr. Leonhardt testified that the subscribers were entitled to be treated free by the hospital physician "if they entered the hospital, but not if they were treated at their homes." He further testified that he never entered into any "contract to attend such subscribers away from the hospital." This is not denied. Any contract made by the subscribers with the mining company or with St. Ann's Hospital might be binding upon them, whether the subscribers were treated at the hospital or at their homes; but the physician could not be bound unless he had agreed to the contract, assented to it, or acted under it.

2. The court did not err in refusing to give the instruction asked for by the plaintiff in error. The language of the instruction was misleading, if not erroneous. The receipt in question reads as follows:

"Juneau, Alaska, March 26, 1895.

"Mr. Robert Duncan, Jr., to S. O. Leonhardt, Dr.

| | |
|---|---|
| To attending Mrs. Duncan and baby | $25 00 |
| To ferry bills for Jan., $14.00; Feb., $10.00; Mar., $10 | 34 00 |
| | $59 00 |

"Rec'd payment in full to date.

"Saml. C. Leonhardt, M. D."

It will be observed that this receipt does not include any services rendered to Robert Duncan, Jr. It was only prima facie evidence of what appears on the face of the receipt. It was for attending Mrs. Duncan and the baby, and, independent of the receipt, the doctor testified that he had been paid for such services. There was a direct conflict in the evidence as to whether or not at the time of its payment the doctor had not stated that it was in full of all charges for treating Mr. Duncan, as well as his wife and baby. That conflict was settled by the verdict of the jury. Moreover, the court gave proper instructions to the jury with reference to the receipt, and was not required to repeat it in language used by counsel, even if it was admitted to be correct in all particulars. Railroad Co. v. Roller, 41 C. C. A. 22, 100 Fed. 738, 759, 49 L. R. A. 77; Swensen v. Bender (C. C. A.) 114 Fed. 1; 11 Enc. Pl. & Prac. 288.

The judgment of the district court is affirmed, with costs