### DALTON et al. v. MOORE et al.

#### (Circuit Court of Appeals, Ninth Circuit. October 16, 1905.)

#### No. 1,116.

1. WRIT OF ERROR—INCOMPLETE RECORD.

    It is the duty of counsel for a plaintiff in error to furnish the Circuit Court of Appeals with a full and complete transcript of the record as described in the certificate to the bill of exceptions, including exhibits, or with the stipulation of opposing counsel waiving any part which is omitted.

2. TRIAL—INSTRUCTIONS—TIME FOR OBJECTIONS AND EXCEPTIONS.

    Where a case was submitted to the jury but two hours before the expiration of the term by limitation, and the court refused to detain the jury to give a party time to reduce his objections to the instructions to writing and present the same, but gave him permission to present them within a reasonable time after the jury had retired, which was done, the fact that the objections were not taken before the jury retired does not deprive such party of the benefit thereof.

3. PARTIES—REINSTATEMENT—WAIVER OF OBJECTION.

    Where a plaintiff, who had been stricken from the complaint on demurrer for misjoinder, was permitted to be reinstated on the trial, and his name appeared in the title of the action in the verdict, the failure of defendant to object at the time of such reinstatement was a waiver of any objection to such action, and cannot be urged as ground for reversal of the judgment.

4. MINES AND MINERALS—FLOODING OF MINING CLAIM—MEASURE OF DAMAGES.

    The measure of damages recoverable for the flooding of a mining claim, preventing work thereon by plaintiffs, who were lessees engaged in working the same, is not the amount expended by them for machinery and other equipment for prosecuting the work, but the value of the use of the claim during the time the work was prevented.

    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, § 247.]

In Error to the District Court of the United States for the First Division of the District of Alaska.

This action was brought by the defendants in error (plaintiffs below) on November 7, 1903, to recover damages in the sum of $53,000 from the plain-

tiffs in error (defendants below), alleged to have resulted from the flooding of the mining ground of the plaintiffs by the unlawful erection of a dam by the defendants. It appears from the pleadings that W. A. Mix and T. D. Stewart were the owners of two placer mining claims, known as the "Jenks Fraction" and "No. 1 Above Discovery," on Porcupine creek, in Alaska, and on September 8, 1900, leased the Jenks Fraction claim, and so much of the adjoining No. 1 Above Discovery claim as was necessary to make a total length of 600 feet along the creek, to F. F. Clark and John Biglow, for a period of a little over three years, until December 31, 1903. By the terms of this lease Clark and Biglow were to commence mining work upon the creek bed and low bars as soon as practicable, and continue such work during the mining season, in such manner as they should deem best. They were to make proper clean-ups, and to give notice of the same to the lessors when the gold was taken from the upper 400 feet of the ground leased, 30 per cent. of the gross proceeds of this portion to be paid as royalty to the lessors, while the gold taken from the lower 200 feet was to be entirely retained by the lessees. The lessees were also to deliver water, by ditch or flume, to the lessors at a designated point, in sufficient quantity to supply a No. 2 Giant. The lessors reserved the right to dump tailings in the flume or creek running through the mining claims, but in such manner as that they would be fully carried off by the water, and would in no way interfere with the working of the claims by the lessees. On October 5, 1900, the lessees, Clark and Biglow, entered into a contract with the plaintiffs I. H. Moore and L. S. Kellar, by which the plaintiffs agreed to advance money to install a mining plant on said leased ground to the extent of $12,000, and to become responsible to Clark and Biglow for the performance of their covenants and agreements under their lease aforesaid, and in consideration therefor were to receive one-third of the net profits from the working of the property under the terms of the lease, the first money received over and above the running expenses to be turned over to the plaintiffs until they should be reimbursed for the moneys advanced by them. If the cost of installing the plant should exceed $12,000, one-third of the excess was to be paid by the plaintiffs and two-thirds by Clark and Biglow. In this contract it was stipulated that certain specified machinery should be installed, and a flume, not less than four feet in width and three feet in depth, should be constructed to convey the water from McKinley creek to the leased ground, and that said flume and other property pertaining to the contract should become the joint property of the parties to the contract. This contract was thereafter ratified by the lessors, Mix and Stewart. In October, 1901, Biglow assigned all his rights under the said lease to the plaintiffs, and in June, 1902, Clark did the same. Between October 5, 1900, and June 1, 1902, the plaintiffs placed upon said leased ground the necessary mining machinery, buildings, elevators, etc., for operation thereof, at an alleged expense of $27,000.

The defendants were the owners of and operating a mining claim immediately below the Jenks Fraction claim, known as Discovery claim, on Porcupine creek, which creek ran through and across the property leased by the plaintiffs and the property of the defendants. After the water of this creek was diverted by the mines, flumes, and water pipes of the plaintiffs, it was returned to the bed of said creek for the use of the defendants in the operation of their mining properties. In May, 1902, the defendants built a dam in said creek on their claim, just below the lower boundary of the Jenks Fraction claim. It is alleged that this dam crossed the creek from bank to bank, and was constructed so carelessly that it served as an obstruction in the stream, and prevented the water from flowing through the channel thereof, and that this dam was placed in the creek against the plaintiffs' protest, and that defendants knew it would cause damage to plaintiffs. It is alleged that the dam caused the water to back up and inundate the premises of the plaintiffs, filling with water a pit which plaintiffs had dug; that plaintiffs notified defendants of these facts, and defendants promised that, as soon as plaintiffs were ready to begin operations, they would remove the dam or alter its construction so that it would not inundate or submerge plaintiffs' property; that by reason of these promises the plaintiffs finished their plant, and on June 10, 1902, commenced operations and proceeded to pump the water out

of the pit, using their pumps and elevators and a large number of men, until. June 22, 1902, but found that nothing beneficial could be accomplished, because of the time and attention needed in keeping the premises clear of water; that on said June 22, 1902, tthe dam was partially removed and the obstruction to the water overcome by reason thereof, and defendants promised to leave the same out. It is alleged that plaintiffs then proceeded to put their premises into condition for mining, removing débris and deposit caused by the backing up of the water, and continued their work until July 8, 1902, when the defendants again caused the water to be backed up upon and to submerge the premises of the plaintiffs, and fill the pit in which plaintiffs were working; that between July 8 and August 5, 1902, plaintiffs continued their efforts to mine, relying upon the assurances of defendants that they would remove the dam, but that such efforts were unavailing on account of the water, and the labor and amount paid therefor was a loss to plaintiffs; that on August 10, 1902, defendants caused a portion of the dam to be removed, whereby the water lowered to some extent, but not enough for plaintiffs to operate their mine, owing to the débris that had gathered above the dam; and that between August 10th and 23d the plaintiffs worked at pumping out the water and clearing away débris, and on the last-mentioned date were able to resume mining operations, continuing the same until September 23, 1902, when they were obliged to close down their plant by reason of the submerging of their premises by the backing up of the water, caused by an embankment which had formed of the refuse matter coming down the creek and lodging against the remaining portion of the dam. It is alleged that these obstructions have ever since remained in said creek, causing the water to back up over the plaintiffs' premises in such manner as to entirely render the same valueless as mining property, and submerging the machinery and improvements thereon; that the plaintiffs have, by the wrongful and negligent acts of the defendants, been prevented from operating the mining property fo⁻ the season of 1903; and that their lease thereof expires on the 31st day of December, 1903. It is alleged that the leased premises were rich in gold, and could have been very profitably worked by the plaintiffs, had they not been prevented from so doing by the wrongful acts of the defendants.

A motion to strike out certain paragraphs of the complaint was denied, and a demurrer to the complaint on the ground of misjoinder of parties plaintiff was overruled by the court below.

The defendants, in their answer, admit their ownership of Discovery claim, and the building of the dam in May, 1902, but deny generally the other allegations of the complaint. As matter of defense, they aver that the dam built by them in no manner caused the water of the creek to flood any ground claimed by plaintiffs, and that it was so built as to raise the level of the water of the creek only about one foot above the ordinary level, with the object of causing the water to flow into a flume to be used by the defendants in mining operations. It is averred that the flooding of the pit which plaintiffs had sunk in the bed of the said creek, and all the damage resulting to plaintiffs by reason of the rise of the waters of the creek, were caused by the plaintiffs' own negligence during the prosecution of their work, by discharging their tailings into said creek onto defendants' claim at a point immediately below the upper boundary thereof and about 10 feet below plaintiffs' pit, and that said tailings accumulated in the channel of the stream, causing the water to accumulate above such point, and said backwater, together with the natural underground flow or seepage water beneath the bed of the stream, caused the flooding of the pit. It is alleged that the flooding was further contributed to by the fact that the large flumes carrying water over the plaintiffs' premises were so negligently constructed as to fail to hold the waters, but the same were released into the channel of the stream above the pit, and by natural flow entered the same. It is further alleged that after plaintiffs' complaints to defendants, about August 10, 1902, an agreement was had between them, for the purpose of amicably settling their differences, permitting plaintiffs to continue to dump their tailings on Discovery claim, the defendants promising to destroy the dam so as to restore the flow of the stream to its natural level, in consideration of which it is alleged that plaintiffs agreed to and did release defendants from any and all claims for

damages by reason of having erected said dam. It is alleged that defendants did then destroy the said dam so as to restore the flow of the waters to their natural level, and have never since rebuilt or repaired the same, and that plaintiffs continued their efforts to successfully work the ground claimed by them until some time in the month of September, 1902, when they abandoned the venture, and have not since attempted to work the ground.

The trial of the case resulted in a verdict in favor of the plaintiffs in the sum of $13,083.06. Judgment was entered thereupon, and the case brought to this court upon writ of error.

Malony & Cobb (Alfred Sutro, of counsel), for plaintiffs in error.

John R. Winn, L. R. Gillette, and Lewis P. Shackleford (Charles B. Marks, of counsel), for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts). The defendants in error interpose a preliminary objection to the transcript of record in this case, on the ground that certain exhibits introduced in evidence in the court below, and made a part of the bill of exceptions, have not been transmitted to this court. It appears from the evidence that these exhibits were two plats or charts showing the general location of the claims owned by the parties to the action on Porcupine creek, and the flume and dam referred to in the evidence, and a number of photographs of the premises taken at different times, showing the improvements on the grounds and the different stages of the water backed up by the dam. The failure of counsel for the plaintiffs in error to have these exhibits attached to the record is not satisfactorily explained; and, while we do not find that they would be of any assistance to the court in determining the questions of law involved in the assignments of error, this fact is no excuse. It was the duty of counsel for the plaintiffs in error to furnish this court with a full and complete transcript of the record as described in the certificate to the bill of exceptions or the stipulation of opposing counsel waiving the production of the exhibits, and his failure in this respect is a sufficient cause for censure. But we do not consider it sufficient, under the circumstances of this case, to justify a dismissal of the writ of error.

It is further objected by the defendants in error that this court cannot consider the exceptions taken by the plaintiffs in error to the instructions given to the jury by the lower court, for the reason that the exceptions were not taken until after the jury had retired to consider their verdict; citing the cases of Western Union Tel. Co. v. Baker, 85 Fed. 690, 29 C. C. A. 392; Yates v. United States, 90 Fed. 57, 32 C. C. A. 507, and Thiede v. Utah, 159 U. S. 522, 16 Sup. Ct. 62, 40 L. Ed. 237.

The following proceedings were had with respect to the instructions of the court given to the jury:

"The above and foregoing instructions were given to the jury at about 10 o'clock at night on the last day of the court, which necessarily expired at 12 o'clock at night. After the instructions were read counsel for the defendants came to the court and asked for time in which to present his objections to the instructions and to reduce the same to writing. The court, being of the opinion that to detain the jury until such objections were made would be practically to make the result of the case abortive, permitted counsel to make

his objections and take his exceptions to the instructions after the jury retired to consider of their verdict and within a reasonable time. The verdict of the jury was returned shortly before 12 o'clock, and defendants filed their motion for a new trial, which was continued for hearing until the next term, and court thereupon adjourned. Under the statement of the court as above made counsel now presents his objections and exceptions to the several instructions as above set forth as his bill of exceptions in that behalf, and the same is allowed on this 10th day of December, 1903, and ordered filed and made a part of the record herein, over objections of plaintiff."

The verdict of the jury was returned and entered of record November 28, 1903. The objections and exceptions were allowed on December 10, 1903, and filed December 18, 1903. A motion for a new trial was made immediately upon the entry of the verdict, and was denied on July 22, 1904. The instructions to the jury were given near the close of the term, and it appears to have been the opinion of the court that the case should be concluded before the end of the term at midnight, in order that the regularity of the proceedings should be preserved. To accomplish this purpose, the court, before the case was closed, permitted counsel to take his exceptions afterwards that the jury might take the case without delay. The questions involved in the instructions were well understood by court and counsel, and there was no misunderstanding as to the instructions that were given and refused, or the exceptions that counsel desired to take thereto. We think the plaintiffs in error cannot be deprived of their exceptions to the charge to the jury by the action of the court. Ah Lep v. Gong Choy, 13 Or. 211, 9 Pac. 483.

It is assigned as error that in the complaint there was a misjoinder of parties plaintiff—that Stewart, the lessor, was joined with Moore and Kellar, lessees, in an action that charged no injury to the freehold estate. The objection was taken by demurrer, and was sustained by the court. Subsequently, upon the trial and after the conclusion of plaintiffs' testimony, counsel for plaintiffs asked the court for the reinstatement of Stewart as a party to the cause. This motion was probably based upon the terms of the original lease of Mix and Stewart to Clark and Biglow, under which the lessors were to receive a royalty of 30 per cent. of the gross proceeds of gold taken or washed from the upper or south 400 feet of the creek bed and low bars thereof. But, however that may be, the court said in reply to this motion: "Well, if you want to put him in, and there is no objection, put him in." There was no objection, and while there was no order made making him a party to the action, his name appears in the title to the action in the verdict of the jury. The failure of the defendants to interpose an objection to the reinstatement of Stewart as a party plaintiff was a waiver of all objection to such action by the court, and cannot now be made a ground for the reversal of the judgment.

The next question relates to the measure of damages. In the complaint plaintiffs alleged, as one of the elements of damages sustained by the plaintiffs, that between October 5, 1900, and June 1, 1902, they expended for improvements, machinery, and for labor performed and done upon the leased premises the sum of $27,000, and that by reason of the wrongful, careless, negligent and malicious acts of the defend-

ants the machinery and improvements placed upon the premises became an entire loss. The defendants moved to strike out this paragraph of the complaint, on the ground that the matters and things therein set out were irrelevant, immaterial, and redundant, and that the expenditures therein set out were made before the alleged tort by the defendants, and the alleged tort in no wise caused or contributed to the alleged expenditures, and was not shown to have been connected therewith. The motion to strike out was denied. This part of the complaint was also demurred to, and the demurrer overruled. In support of the allegation, the plaintiffs introduced the evidence of Dr. L. S. Kellar, one of the plaintiffs, whose evidence tended to show that up to June 10, 1902, the cost of the machinery laid down upon the ground was $12,997.22, and the cost of the labor in putting up the machinery was $4,509. This witness also testified that the cost of labor in 1901 in excavating and in putting in elevator and machinery was $8,091.23, and that the cost of labor from June 10 to August 23, 1902, was $1,361.25. The aggregate of these several items was $26,958.70. The witness also testified that at the time of the trial the machinery could not be sold for anything, and that it could not be moved to any other place so as to realize anything out of it. This evidence was admitted over the objections of the defendants. The court instructed the jury upon this feature of the case as follows:

"If you are satisfied by the weight and preponderance of the evidence that the plaintiff entered upon this mining enterprise in good faith and necessarily expended in preparing to work their ground the sum of $27,000.00, and that this money was necessarily expended in order that the plaintiff might work his ground successfully and get his plant in position for mining, and if you are further satisfied by the preponderance of the evidence that the defendants were fully informed of the nature and duration of the mining license or lease upon which the plaintiff has entered, and you are further satisfied by a preponderance of the evidence that the defendants, by the construction of the dam across the creek, and as the immediate consequence of the construction of said dam, flooded out the plaintiffs, and made it reasonably impossible for them to continue their work of mining, and that they were absolutely prevented therefrom up to the determination of their lease or license by such acts of defendant, then you should find for the plaintiff in this cause. And, if absolutely prevented by the defendants from mining the ground the plaintiffs had entered upon throughout the whole term of their lease, the measure of the plaintiffs' damages is the necessary expenditure made in preparing for such work, less the value of the machinery and appliances after the wrong of which they complain was committed. You are further instructed, gentlemen of the jury, that this claim of damages and this measure of damages can only be resorted to if you find by the preponderance of the evidence that the plaintiff has been absolutely prevented by the defendants from doing any work upon their claim after the wrong complained of, and that their expenditure has become wholly lost."

To this instruction the defendants interposed the following objections:

"(1) The measure of damages given the jury is not the measure of damages under the law and the evidence in this case. (2) The evidence conclusively showed that plaintiffs were not absolutely prevented from working their lease during the whole term of their lease, but did in fact work out 135 feet of the 600 feet claimed under the lease. (3) The evidence conclusively showed that the dam complained of was entirely removed in August, 1902, and did not prevent or hinder plaintiffs from working thereafter. (4) The term of the lease mentioned did not expire till long after this suit

was brought, and until after the trial hereof. (5) The evidence was undisputed that the plaintiffs had extracted $2,100 in gold from the 135 feet of ground worked, and the measure of damages given allowed the plaintiffs to recover the expenses of extracting said gold and the value of the gold as a net profit."

It is manifest that the measure of damages here stated was erroneous. It does not appear from the evidence that the backing up of the water onto plaintiffs' premises injured the machinery placed upon the premises. The fact that the machinery could not be sold for anything at the time of the trial, and could not be moved to any other place so as to realize anything, had relation to the situation of the property, and not to the action of defendants' dam. Its lack of value at that place to others than the plaintiffs would have been the same if there had been no dam. Its lack of value to the plaintiffs was by reason of the fact that for a certain time defendants' dam backed up the water upon plaintiffs' claim, and during that time they could not use the property. Suppose that the machinery, by reason of its location and the difficulty of getting other machinery into that place, had increased in value in an amount equal to any damages sustained by the plaintiffs, would that circumstance have deprived the plaintiffs of their right to recover damages from the defendants for their acts causing the loss of the use of this claim? The law stated by the court would have that effect. Again, suppose the claim itself was of so little value that the plaintiffs, even with their costly machinery, could not work it at any profit at all, under the instructions complained of the act of the defendants in preventing plaintiffs from working the ground would render the former liable for the cost of the machinery. This manifestly would be grossly unjust, and goes to show that neither the cost nor the value of the machinery was the proper test of the plaintiffs' damages. On the contrary, the true measure of damages was the rental value of the property during the time plaintiffs were deprived of its enjoyment. The measure of damages is the direct pecuniary loss sustained by the party. The damages to be recovered must always be the natural and proximate consequence of the act complained of. The fact that this rule may be difficult of application in a given case is not a sufficient objection. But it does not appear to be difficult of application in this case. The plaintiffs held a lease of the claim dated September 8, 1900, which expired on December 31, 1903. The term was a little over three years. The evidence shows that plaintiffs were ready to go to work on the claim on June 10, 1902, but by reason of the water on the claim, backed up by defendants' dam, they did not get to work until August 23, 1902. They worked the claim for one month, or until September 23, 1902, taking out $2,100 in gold, at an expense of about $1,500, mining 135 feet of the 600 feet of leased ground. Had such property no rental value that could be determined by evidence? We think it had, and that upon proper allegations in the complaint the fact might have been established by evidence. For this erroneous ruling with respect to the complaint and in the instructions to the jury, the judgment must be reversed. The other errors assigned do not call for discussion.

Judgment reversed, with instructions to grant a new trial.