[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10232
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-00243-TCB-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AUGUSTO NORIEGA-PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 24, 2019)

Before JILL PRYOR, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Augusto Noriega-Perez appeals the 70-month sentence imposed after he pleaded guilty to illegal re-entry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b)(2). On appeal, he contends that the district court's sentence was substantively unreasonable because it failed to reflect certain mitigating factors regarding his personal history, created unwarranted disparities between him and other defendants who are fast-track participants,[1] and doubly counted his criminal history. After a review of the record in this case, and considering Noriega-Perez's request for the 70-month sentence, we affirm.

## I. Procedural History

On June 26, 2018, a federal grand jury charged Noriega-Perez with illegal re-entry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b)(2). Noriega-Perez pleaded guilty without a plea agreement.

In preparation for the sentencing hearing, a probation officer prepared a presentence investigation report ("PSI"). According to the PSI, Georgia State Patrol Troopers pulled over Noriega-Perez's vehicle because of an expired tag. When asked for identification, Noriega-Perez produced an identification card from

---

[1] Fast track programs, sometimes called "early disposition" programs, are available in certain geographic regions of the U.S. to deal specifically with the large volume of illegal re-entry cases. *United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008). If available, the government can move for a four-level downward departure based on early defendant cooperation. *See id.*

2

Mexico with a different name.  A search of a database revealed that Noriega-Perez was a citizen of Mexico and was previously removed from the U.S.

The PSI also contained information relating to Noriega-Perez's criminal history.  Noriega-Perez was removed from the United States in 2002 following a conviction and sentence for possession with intent to distribute methamphetamine. In 2007, Noriega-Perez was arrested in DeKalb County, Georgia, on drug trafficking charges.  After serving this sentence, Noriega-Perez was deported to Mexico a second time in 2014.  Noriega-Perez informed the probation officer that his reason for returning to the U.S. prior to his most recent offense was to help care for his youngest son, who suffers from asthma.

Under U.S.S.G. § 2L1.2(a), the base offense level for a violation of 8 U.S.C. §§ 1326(a) and (b)(1) is 8.  Noriega-Perez was assigned a ten-level enhancement under U.S.S.G. § 2L1.2(b)(2)(A) because, prior to his first deportation, he sustained a felony conviction for which the sentence imposed was five years or more.  He received another ten levels under U.S.S.G. § 2L1.2(b)(3)(A) for the DeKalb drug-trafficking conviction after the initial deportation.  With three levels removed for acceptance of responsibility, Noriega-Perez's total offense level was 25.  Based on his prior criminal history, Noriega-Perez had a criminal history category of III, which put his advisory Guidelines range at 70 to 87 months.

Noriega-Perez did not object to the information in the PSI or Guidelines calculation.

At the sentencing hearing, Noriega-Perez's counsel admitted the court had correctly calculated Noriega-Perez's offense total and Guidelines range. The government requested that the court sentence Noriega-Perez within the Guidelines range. Defense counsel argued for a sentence at the low end of the Guidelines range:

> We cannot change his prior criminal history, and for that he is actually paying the price of very[,] very significant enhancements… . Judge, really the guideline range of 70 months for a first reentry, I would say, is quite significant… . When I received the [PSI] from probation, I mean, the [PSI] is what it is, and we did not file an objection to the [PSI]. We are not asking Your Honor to depart from the guideline range. We do agree that the guideline range is appropriate. The conduct under which he was arrested for is not something for which he has been charged. He has not been charged with any crime, so we respectfully ask for the Court to consider not punishing my client any further for conduct for which the government could have potentially, theoretically, had they had evidence, elected to prosecute my client which they specifically elected not to prosecute my client. The guideline range is harsh enough as it is.

Defense counsel repeated that Noriega-Perez should be "receiving a sentence of, we hope, 70 months." In summation of his argument, defense counsel stated:

> I would just respectfully ask the Court to impose a sentence of 70 months, at the low end of the Guidelines range… . We did not even file an objection to the [PSI] report because the reality is, when I look at the factors, it

4

really is what it is. So, I would respectfully ask for 70
months.

The district court imposed the requested 70-month sentence. Counsel for Noriega-Perez was asked if he had any objection to the sentence, to which defense counsel answered, "No, Judge. Thank you so much." This appeal followed.

## II. Standard of Review

We normally review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007).[2] However, "[t]he doctrine of invited error is implicated when a party induces or invites the district court into making an error." *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (quoting *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998)). "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *Id.* (quoting *United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997)). Where invited error exists, it precludes us from review of the alleged error. *See United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005).

## III. Analysis

---

[2] The government argues that the standard of review in this circumstance should be plain error, since the defendant did not object to the substantive reasonableness of the sentence at the hearing. We need not decide what standard of review is appropriate, however, because Noriega-Perez's claim fails on another ground. *See United States v. Victor*, 719 F.3d 1288, 1291 n. 3 (11th Cir. 2013).

The doctrine of invited error has deep historical roots in the criminal justice system, appearing in Supreme Court criminal cases as early as 1895.[3]  The Court has explained the rationale for the doctrine as follows:

> Plainly enough, counsel consciously and intentionally failed to save the point and led the trial judge to understand that counsel was satisfied.  We see no warrant for the exercise of our discretion to set aside standing rules, so necessary to the due and orderly administration of justice, and review the challenge to the legal accuracy of the charge where, as here, the failure of the judge to follow the text of the requested instruction was, at the last, induced by the action of counsel.  Any other course would not comport with the standards for the administration of criminal justice.  We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him.

*Johnson v. United States*, 318 U.S. 189, 200–01 (1943).  In more recent years, we have explained that the invited error doctrine "stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal."  *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009).

Whether the doctrine applies depends on the actions of the parties:

> "The doctrine of invited error is implicated when a party *induces* or *invites* the district court into making an error.  For example, a defendant can invite error by introducing otherwise inadmissible evidence at trial or by submitting

---

[3] In *Thiede v. Utah*, 159 U.S. 510, 519–20 (1895), a homicide appeal, the Court held that swearing in one of the jurors as an interpreter during the trial was not prejudicial to the defendant's rights because the defendant consented to the arrangement.

6

> an incorrect jury instruction to the district judge which is then given to the jury."

*Stone*, 139 F.3d at 838 (emphasis added); *see also United States v. Carpenter*, 803 F.3d 1224, 1236 (11th Cir. 2015) (holding that because defendant "repeatedly requested" and "suggested" supervised release at his sentencing hearing, he "induced or invited" the imposition of supervised release).

Once it is determined that a defendant invites error, "an appellate court will not review an error invited by a defendant, on the rationale that the defendant should not benefit from introducing error at trial with the intention of creating grounds for reversal on appeal." *Stone*, 139 F.3d at 838; see also *Silvestri*, 409 F.3d at 1337 ("It is well established in this Circuit that to invite error is to preclude review of that error on appeal.").

Here, there is no doubt that Noriega-Perez sought the sentence he now appeals. [4] Defense counsel specifically told the judge that a 70-month sentence would be sufficient: "Judge, really the Guideline range of 70 months for a first reentry, I would say, is quite significant." Defense counsel continued to argue that

---

[4] The fact that Noriega-Perez's counsel, not Noriega-Perez himself, made these statements does not affect the analysis. In *United States v. Page*, 661 F.2d 1080, 1081 (5th Cir. 1981), a defense counsel related to the judge in chambers, outside the presence of the defendant, that he and the defendant wanted to waive the defendant's right to a jury trial. The defendant alleged this was error on appeal, and in invoking the doctrine of invited error, we noted that "[we] are entitled…to accept the chambers representations of trial counsel" as the true wishes of the defendant. *Id.* at 1083. Here, of course, Noriega-Perez was present during counsel's arguments, assisted by an interpreter, and made no interjection.

granting a 70-month sentence would be appropriate, not greater than necessary, for defendant's alleged conduct, stating that "we are not asking Your Honor to depart from the guideline range" and that "[w]e do agree that the guideline range is appropriate." After this portion of his argument, Noriega-Perez first asked for the sentence he ultimately received: "…a sentence of, we would hope, 70 months…" He requested it again: "I would just respectfully ask the Court to impose a sentence of 70 months, at the low end of the Guidelines range." And again: "We did not even file an objection to the PSR report because the reality is, when I look at the factors, it really is what it is. So, I would respectfully ask for 70 months." And when the court asked if the defense had any objection to the sentence, defense counsel responded no.

Accordingly, the record reveals that Noriega-Perez specifically requested the sentence he received, and the invited error doctrine prohibits our review.[5]

## IV. Conclusion

Because the alleged error Noriega-Perez complains of was initiated, requested, and pursued by the defendant, review is precluded under the invited error doctrine. Accordingly, we affirm.

**AFFIRMED**.

---

[5] We note, however, that were we permitted to look at the substantive reasonableness of the sentence, Noriega-Perez would have a high bar to relief, as a within-Guidelines sentence is presumptively reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007).