## CLAY AXHELM v. THE UNITED STATES.

(Filed Feb. 7, 1900.)

1. ASSAULT WITH INTENT TO ROB—*What Statute Governs—Not Merged in the Crime of Robbery in the Indian Country.* By the provisions of section 23, of the act of March 1, 1889, (United States Statutes at Large, volume 25, page 787,) one who, in the Indian country, feloniously, wilfully, and with malice aforethought, assaults any person with intent to rob, may be convicted of such offense and sentenced to confinement at hard labor for a term not less than one nor more than fifteen years, even though the robbery is actually accomplished, and the crime of assault with intent to rob is not merged into the crime of robbery in the Indian country. for the reason that the United States statutes nowhere provide any punishment for the crime of robbery in such country; and section 2561, of the Statutes of Oklahoma, to the effect that "No person can be convicted of an attempt to commit a crime, when it appears that the crime intended or attempted was perpetrated by such person in pursuance of such attempt," has no application to the crime of assault with intent to rob in the Indian country, as such crime is governed by the laws of the United States and not by the laws of the Territory of Oklahoma.

2. INSTRUCTIONS—*Gist of Offense.* An instruction that "You are further instructed that in this case the gist of the offense (referring to assualt with intent to rob in the Indian country,) is the assault. and if you believe from the evidence, beyond a reasonable doubt. that the defendant, Clay Axhelm, did, on or about the 8th day of March, 1899, in that portion of the Indian country, known as the Otoe and Missouri Indian reservation, attached to Noble county for judicial purposes, wilfully, unlawfully, feloniously, and of his malice aforethought, make an assault upon one Thomas P. Means, with intent to rob the said Thomas P. Means, and in manner and form as charged in the indictment, then the defendant is guilty and you should so find," incorrectly states the law. The gist of the action consists not only in the assault, but the assault. in order to constitute assault with intent to rob in the Indian country, must have been made wilfully, unlawfully, feloniously and of his malice aforethought, with intent to rob.

—21

3. SAME—*Intent—Element of the Crime.* An instruction that, "That court further instructs the jury, if you believe from the evidence in this case, that an assault was made by the defendant, if you find such an assault was made, and if the assault was made without any intent to rob, then you should find the defendant not guilty," authorizes the jury to find the defendant guilty under ev dence that might not cover every element of the crime. The evidence should establish that the defendant wilfully, unlawfully, feloniously, and of his malice aforethought, made an assault with intent to rob the person so assaulted, and evidence which fails to establish all of these elements against the defendant, beyond a reasonable doubt, is not sufficient to authorize a conviction of such crime.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before B. T. Hainer, District Judge.*

*W. M. Bowles, J. W. Quick* and *P. W. Cress,* for plaintiff in error.

*John W. Scothorn, United States Attorney, B. S. McGuire* and *L. M. Keys, Assistant United States Attorneys,* for defendant in error.

Opinion of the court by

BURWELL, J.: This is a case in which the plaintiff in error, Clay Axhelm, was prosecuted, by indictment, in the district court of the Fourth judicial district, by the United States, for the crime of assault with the intent to rob one Thomas P. Means, in the Otoe and Missouri Indian reservation, which was at that time attached to the county of Noble for judicial purposes, and which county comprised a part of such district. After the preliminary motions and demurrer were disposed of, the defendant entered a plea of not guilty. A trial was had on the 16th day of May, 1899, which resulted in the conviction of the defendant, and he was, by the court, sen-

tenced to imprisonment at hard labor for a term of ten years in the federal penitentiary, at Fort Leavenworth, Kansas, and to pay a fine of $1 and the costs of his prosecution, taxed at $31.35.    From this judgment and sentence he has appealed to this court and prays a reversal of the judgment and sentence entered by the trial court.

Section 23, of the act of March 1, 1889, (U. S. Statutes at Large, volume 25, page 767,) the section under which the defendant was indicted, reads as follows:

"That every person aforesaid, who shall, in the Indian country, feloniously, wilfully, and with malice aforethought, assault any person with intent to rob, and his councilors, aiders, and abettors, shall, on conviction thereof, be imprisoned at hard labor for a time not less than one nor more than fifteen years."

It is contended by counsel for plaintiff in error that the United States Statutes nowhere contain any provision making robbery a crime against the United States, or providing any punishment for such crime, which contention is admitted by counsel for the government, and we have made search for such a statute, but have been unable to find any; that there are no common law crimes against the United States; that if the defendant is guilty of any offense, he is guilty of robbery, and that by reason of the fact that the robbery was actually accomplished, the crime of assault with intent to rob was merged into the greater crime; and there being no punishment provided for robbery, under the United States Statutes the defendant should have been acquitted.

These contentions are very nice in theory, but unsound in reason, and unsupported by the authorities.    Con-

ceding, however, that there are no common law crimes against the United States, will it be contended by any one versed in the law that congress has not the power to make any wrongful act criminal? Certainly not. Then congress had the power to declare that every person who, "in the Indian country, feloniously, wilfully, and with malice aforethought, assaults any person with intent to rob," etc., on conviction thereof, shall be punished by imprisonment, at hard labor, for a given period, even though no punishment is provided for the crime of robbery in the Indian country.

Why congress should provide a severe punishment for persons convicted of the crime of assault with intent to rob, and fail to prescribe any punishment for one guilty of the crime of robbery, is something that we cannot tell, but it is quite likely that in the rush of business it overlooked this fact.    Still, its failure to provide for the punishment of robbery in the Indian country cannot affect the validity of the statute which amply provides for the punishment of those convicted for assault with intent to commit robbery.    It is true that congress has not defined the meaning of the word "rob," or "robbery," but that was not necessary, for it is an elementary rule, in construing a statute containing words which have a fixed meaning at common law, and the statute nowhere defines such words, that they will be given the same meaning they have at common law, and so far as we have been able to find, there are no exceptions to this rule.

This court had occasion to discuss this question at some length in the case of *Hughes v. The Territory*, 8 Okla., 28, 56 Pac. p. 708, and we see no good reason for modifying the rule as above stated, and as enunciated

in that case.    When congress used the word "rob," in the statute under which the defendant was convicted, it had reference to robbery as it existed at common law, and even if there is no United States statute against robbery in the Indian country, the statute provides a punishment for those convicted of "assault with intent to rob."    The statute above quoted is intended to punish for the "assault," and the wicked "intent to rob." The crime, "assault with intent to rob," is a statutory crime, and whenever a defendant charged under it is proven guilty beyond a reasonable doubt, he should be convicted, and such conviction should not be set aside just because congress has failed to provide for the punishment of the higher crime of robbery, for if the contention of counsel for defendant is true, and no act against the United States is criminal unless made so by statute, then the higher crime of robbery does not exist in the Indian Territory, and therefore the crime of assault with intent to rob is not merged or included in the crime of robbery in cases where the robbery is actually accomplished, because the higher crime has not been recognized in such country by the United States statutes.

The defendant, however, cites the court to section 2561, of the Statutes of Oklahoma, which provides:

"No person can be convicted of an attempt to commit a crime when it appears that the crime intended or attempted was perpetrated by such person in pursuance of such attempt."

This statute has no application to this case. The crime charged in the indictment is subject to the laws of the United States, and not to the laws of Oklahoma.

One more question is raised by the appellant, which we will now consider.    It is contended that the court

misdirected the jury in instruction number 12, which is as follows:

"You are further instructed that in this case the gist of the offense is the assault, and if you believe from the evidence, beyond a reasonable doubt, that the defendant, Clay Axhelm, did, on or about the 8th day of March, 1899, in that portion of the Indian country, known as the Otoe and Missouri Indian Reservation, attached to Noble county for judicial purposes, wilfully, unlawfully, feloniously, and of his malice aforethought, make an assault upon one Thomas P. Means, with intent to rob the said Thomas P. Means, and in manner and form as charged in the indictment, then the defendant is guilty, and you should so find."

It is practically admitted by counsel for the government that this instruction is not a correct statement of the law, but it is insisted that the jury could not have been mislead, as other instructions correctly advised the jury what had to be established before it could convict. Let us see if this contention is correct. Instruction number 15, the one which counsel for defendant in error rely upon to cure the error in instruction number 12, reads:

"The court further instructs the jury, if you believe from the evidence in this case, that an assault was made by the defendant, if you find such an assault was made, and if the assault was made without any intent to rob, then you should find the defendant not guilty."

This instruction is also erroneous, for the reason that it advises the jury that if the defendant assaulted the prosecuting witness without *any intent to rob*, then it should find him not guilty. The statute provides that before a defendant under this charge can be convicted, the assault must be made wilfully, unlawfully and of his malice aforethought, with intent to rob. The instruction

last quoted eliminates the elements wilfully, unlawfully, and with malice aforethought, and says, by implication, that if the defendant assaulted the prosecuting witness with *any intent to rob*, no matter how slight, then he should be found guilty. In our opinion this is not the law and the instruction, instead of curing the defect in instruction number 12, was also defective, and authorized a conviction on evidence that did not cover all of the elements of the crime.

Having determined that neither of these instruction is correct, was the defendant prejudiced thereby? We will briefly notice this phase of the case. The defendant took the witness stand in his own behalf. He testified, in substance, that he met Means on the 5th day of March on a public road; that Means said he was going to Stillwater, and defendant told him he was going to Perry, and Means then said "what is the matter with going together?" That when they got to Arkansas City, defendant bought some provisions to eat; that Means borrowed some money from defendant to buy some corn for feed, and promised defendant that he would pay it back when they got to Stillwater; that they went into camp that night near a woods; that after supper they arranged that one should sit up awhile and watch and then the other should sit up and watch while the first slept; that defendant laid down first and gave Means his, defendant's pistol; that finally, after they had changed two or three times, morning came, and the prosecuting witness was keeping watch; that Means then woke defendant, and he got up and went for some water with which to make coffee and get breakfast, and Means laid down and went to sleep; that when the defendant returned with the water, he sat it down and a dog came and put its nose

in the bucket; whereupon defendant kicked it, and Means hearing the noise asked defendant what was the matter, and upon being told what had occurred, Means said to defendant that "I don't like any son of a bitch to abuse a dog of mine;" that defendant said, "I don't like talk of that kind from anybody;" that after a few words had passed between them, Means kept closing in on him and said, "I will kill you, you son of a bitch;" and came at defendant with a knife in his right hand; that defendant grabbed Means by the right hand with his left and held it; that Means then began choking defendant with his left hand and defendant being unable to get away from Means, shot him, and that Means then ran into the woods. The defendant denied having either asked or taken any money from Means.

The testimony shows the defendant's construction of the trouble and, if true, then he is not guilty of assault with intent to rob.    But the court instructed the jury that "the assault is the gist of the offense," and fails to give any instruction covering the testimony of the defendant, which we believe should have been done.    Yet we cannot reverse this case on the ground that the court failed to instruct upon a material matter, for the reason that counsel did not request the court to instruct upon the theory that the defendant was acting in self defense, and do not assign error on its failure to so instruct, but we consider the testimony of the defendant for the purpose of determining as to whether or not he was prejudiced by the instruction which advised the jury that "the gist of the offense is the assault," and perhaps before announcing our conclusion on this point, we should refer to one other instruction which is upon the question of intent.

Instruction number 10:   "The court instructs the jury upon the question of intent, that the law presumes a man to intend the reasonable and natural consequences of any act intentionally done; and this presumption of law will always obtain, unless from a consideration of all the evidence bearing upon the point, the jury entertain a reasonable doubt whether such intent did exist."

This instruction, in our judgment, is a correct statement of the law, but after telling the jury "that the law presumes a man to intend the reasonable and natural consequences of any act intentionally done," the court instructed the jury that "the gist of the offense is the assault."

The defendant admitted having shot the prosecuting witness, but not for the purpose nor with the intent to rob.   The defendant's evidence indicated that he shot him in self defense.    From the instructions, the jury evidently believed that the assault referred to by the court was the shot or shots fired by the defendant at Means.    If this were true, and the defendant actually fired the shots in self defense, then the firing of these shots, or the assault referred to in instruction number 12, did not constitute any part of the crime of assault with intent to rob, much less the gist of the offense; and, while, in the same instruction, the court tells the jury that if it finds the defendant did, wilfully, unlawfuly, feloniously, and of malice aforethought, make an assault upon one Thomas P. Means, with intent to rob the said Thomas P. Means, and in manner and form as charged in the indictment, then the defendant is guilty; even though such latter statement correctly states the law, it is connected with the other statement to the effect

that "the gist of the offense is the assault" by the conjunction "and," and in our opinion, the instructions numbered 12 and 15, under the evidence in this case, were prejudicial to the rights of the defendant, and that the judgment and sentence should be reversed, vacated and set aside, all of which is hereby ordered by the court.

And the warden of the penitentiary wherein the defendant is now confined, or any other person or persons having said defendant in custody, are hereby directed, upon the presentation of a copy of this opinion, duly certified by the clerk of this court, by the United States marshal in and for the Territory of Oklahoma, to deliver the body of the said Clay Axhelm, to the said marshal, and such certified copy of this opinion shall be his warrant and authority for such delivery, and the said marshal shall thereupon transport the said Clay Axhelm, and remove him from the place where he may then be, to the city of Guthrie, and there confine him, the said Clay Axhelm, in the federal jail at said place, there to await a second trial upon the indictment herein, and until discharged according to law.

Hainer, J., having presided at the court below, not sitting; all of the other Justices concurring.