## BERT WELTY v. THE UNITED STATES.

### (Filed March 4, 1904.)

1. **PRACTICE AND PROCEDURE IN UNITED STATES CASES.**
   In matters of practice and procedure in the trial of federal cases the district courts of the Territory, when sitting with the powers of the circuit and district courts of the United States, are governed by the territorial procedure, so far as the same is applicable and not in conflict with some federal statutes upon the same subject.

2. **COURTS—Jurisdiction—Indian Reservation—Exceptions.** The district courts of the Territory of Oklahoma, when sitting with and exercising the powers and jurisdiction of a United States court, have exclusive jurisdiction of all crimes punishable by the laws of the United States, when committed by persons other than Indians upon an Indian Reservation occupied by Indian tribes and to which reservation the Indian title has not been extinguished; also, of all such crimes when committed by an Indian

on such reservation except the specific crimes of murder, manslaughter, rape, assault with intent to kill, arson, burglary and larceny.

3. **CONSTRUCTION OF STATUTE.** In construing a statute containing words which have a fixed meaning at common law, and the statute nowhere defines such words, they will be given the same meaning they have at common law.

4. **MATTERS OF DISCRETION.** A continuance of the cause rests largely within the sound discretion of the trial court, and will not be held as reversible error by this court unless there is a clear abuse of discretion.

4. **CONTINUANCE—Overruled, When.** It is not error to overrule an application for a continuance in a trial for murder, when it appears the defendant had sufficient time to prepare for trial, and to procure the attendance of resident witnesses, and to take the depositions of non-resident witnesses, had he exercised reasonable diligence.

6. **EXCEPTIONS NOT SAVED.** This court will not consider errors occurring during the trial which are not jurisdictional, and which are not saved by being presented to the court in a motion for a new trial.

(Syllabus by the Court.)

*Error from District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Buckner & Sons,* for plaintiff in error.

*Horace Speed, U. S. Attorney, John W. Scothorn* and *Frank Hall, Assistant U. S. Attorneys,* for defendant in error.

STATEMENT OF FACTS.

In this case, Bert Welty, the plaintiff in error, was indicted in the district court of Noble county for the crime of murder, alleged to have been committed in the Otoe and Missouri Indian Reservation, on the 16th day of May, 1901. Upon the motion of the plaintiff in error the venue was changed to Logan county. A trial was had which resulted in a conviction of the defendant for murder, fixing the pun-

ishment at life imprisonment. Motion for a new trial was regularly made, overruled and exception saved. Sentence of the court was pronounced, sentencing the defendant, Bert Welty to the federal prison, at Leavenworth, in the State of Kansas, for the period of his natural life, which was duly excepted to, and the case brought here for review.

Opinion of the court by

IRWIN, J.: The first assignment of error is that the district court of the United States, for Logan county, Oklahoma, had no jurisdiction to try and determine this case. We think this assignment of error is fully and completely answered in the case of *Jemima Goodson v. The United States,* reported in the 7th Oklahoma, at page 117, where this court says:

"The district courts of the Territory of Oklahoma, when sitting with and exercising the powers and jurisdiction of a United States court, have exclusive jurisdiction of all crimes punishable by the laws of the United States, when committed by persons other than Indians, upon an Indian reservation occupied by Indian tribes, and to which reservation the Indian title has not been extinguished; also of all such crimes when committed by an Indian, on such reservation, except the specific crimes of murder, manslaughter, rape, assault with intent to kill, arson, burglary and larceny;" and this doctrine was again re-affirmed by this court in the case of *Herd v. The United States,* decided at the present term of this court.

The second assignment of error is:

"The court erred in overruling the plaintiff in error's motion for a continuance."

This was an application which was addressed entirely to the discretion of the trial court, and the rule in this court is well established, and it has become a settled rule of practice, that unless the party making the motion for a continuance shows conclusively that he has used due diligence in attempting to have the absent witnesses present at the trial, and that their testimony would be material to his defense, that the appellate court will not reverse the case unless a clear abuse of discretion is shown.

In the case of *Taylor Kirk v. The Territory of Oklahoma,* reported in the 10th Oklahoma at page 16, this court said:

"It is no abuse of discretion to overrule an application for continuance where no diligence is shown to procure the attendance of resident witnesses, or to take the depositions of non-resident witnesses."

In the case of *Hyde v. The Territory of Oklahoma,* 8 Okla. 69 to 72, it is said:

"A continuance of the cause rests largely within the sound discretion of the trial court, and will not be held as reversible error by this court, unless there is a clear abuse of discretion."

And in the case of *Crumpton v. The United States,* reported in the 138 U. S. at page 361, it is said:

"Whether in a criminal case, the court will grant an application by the prisoner, made during the trial, for process for witnesses, and will delay the trial during the execution of the process, is a matter of discretion with the trial court, not reviewable here."

And this court again in the case of *Smith v. The Territory,* 11 Okla. 669, says:

"It is not error to overrule an application for a continuance, in a trial for murder, when it appears the party had sufficient time to prepare for trial, and to procure the attendance of resident witnesses, and to take the depositions of non-resident witnesses, had he exercised reasonable diligence."

The record in this case shows that the indictment was returned May 16th, 1901, and this application for a continuance was not made until November 25th, 1901, a period of over six months. It fails to show that any attempt was made to procure either the attendance of the witnesses or their depositions until some time in the week prior to the commencement of this trial, and the time of making this application for a continuance. The record also shows that these witnesses, with the exception of one, were all living in an adjoining county, and this one was at the time of the application in Canada. We do not think this is the exercise of due diligence; and the granting or refusing of the continuance, being a matter largely in the discretion of the trial court, the decision of which will not be reversed by this court, unless it is clearly shown that there has been an abuse of such discretion, we are not prepared to say that the discretion in this case has been abused to the detriment of the defendant; nor do we think the overruling of this motion for a continuance was reversible error.

The third assignment of error is:

"The court erred in forcing the plaintiff in error into trial before he had been served with a list of the jury and the witnesses, as by the laws of the United States provided for."

This assignment of error raises the question as to the procedure in force in cases where federal criminal cases are on trial, in a territorial court, sitting with the powers of a United States court. We think the true rule is that the district court, when trying such cases, and sitting with the powers of a United States court, is governed by the procedure prescribed by the territorial legislature, subject to a few express or implied conditions in the Organic Act, or in some law of congress passed especially for this Territory, and that the federal procedure only applies, and was only intended by congress to apply and to be followed in the trial of cases in the circuit and district courts of the United States, and has no application, and never was intended to be followed in the trial of a federal criminal case in the Territory. Our district courts are congressional courts, upon which have been conferred jurisdiction to try, with a few exceptions, any case that could be tried in an United States circuit or district court, and when a litigant comes into court, either upon his own motion, or is brought in by process, he is governed by the procedure, both civil and criminal prescribed by the territorial legislature.

In the case of *Grant Stanley v. The United States,* 1 Okla. 336, this court says:

"We have repeatedly held that in matters of practice, in the trial of federal cases, our courts are governed by the territorial procedure so far as the same is applicable and not in conflict with some federal statute upon the same subject."

The federal criminal procedure was intended by congress to govern the trial of cases in United States circuit and district courts, and was not intended for the district

courts in territories, upon which had been conferred juris-diction to try cases which in states would be tried in a cir-cuit or district court of the United States; therefore we think it necessarily follows that the territorial criminal procedure act is not in conflict with a federal statute upon the same subject.

In the case of *Hornbuckle v. Toombs,* 18 Wallace, 648, it is held:

"That the practice, pleadings, and forms and modes of proceeding of the territorial courts, as well as their respec-tive jurisdictions, subject, as before said, to a few express or implied conditions in the Organic Act itself, were in-tended to be left to the legislative action of the territorial assemblies, and to the regulations which might be adopted by the courts themselves. * * * *"

In this last case Mr. Justice Bradley, speaking for the court says:

"The acts of congress respecting proceedings in the United States courts are concerned with, and confined to, those courts, considered as parts of the federal system, and as invested with the judicial power of the United States expressly conferred by the Constitution, and to be exercised in correlation with the presence and jurisdiction of the sev-eral state courts and governments. They were not intended as exertions of that plenary municipal authority which con-gress has over the District of Columbia, and the territories of the United States. They do not contain a word to indi-cate any such intent. The fact that they require the cir-cuit and district courts to follow the practice of the re-spective state·courts in cases at law, and that they supply no other rule in such cases, shows that they cannot apply to the territorial courts. As before said, these acts have spe-

cific application to the courts of the United States, which are courts of a peculiar character and jurisdiction.

"Whenever congress has proceeded to organize a government for any of the territories, it has merely instituted a general system of courts therefor, and has committed to the territorial assembly full power, subject to few specified or implied conditions, of supplying all details of legislation necessary to put the system into operation, even to the defining of the jurisdiction of the several courts. As a general thing, subject to the general scheme of local government chalked out by the Organic Act, and such special provisions as are contained therein, the local legislature has been entrusted with the enactment of the entire system of municipal law, subject, also, however, to the right of congress to revise, alter, and revoke at its discretion. The powers thus exercised by the territorial legislatures are nearly as extensive as those exercised by any state legislature; and the jurisdiction of the territorial courts, is collectively coextensive with and correspondent to that of the state courts—a very different jurisdiction from that exercised by the circuit and district courts of the United States. In fine, the territorial, like the state courts, are invested with plenary municipal jurisdiction.

"It is true that the district courts of the Territory are, by the Organic Act, invested with the same jurisdiction, in all cases arising under the Constitution and laws of the United States, as is vested in the circuit and district courts of the United States; and a portion of each term is directed to be appropriated to the trial of causes arising under the said Constitution and laws. Whether, when acting in this capacity, the said courts are to be governed by any of the regulations affecting the circuit and district courts of the United States, is not now the question. A large class of cases within the jurisdiction of the latter courts, would not, under this clause, come in the territorial courts, namely,

those in which the jurisdiction depends   on the citizenship of the parties.   Cases arising under the Constitution and laws of the United States would be composed mostly of revenue, admiralty, patent and bankruptcy cases, prosecutions for crimes against the United States, and prosecutions and suits for infractions of the laws relating to civil rights under the fourteenth and fifteeenth amendments.   To avoid question and controversy as to the modes of proceeding in such cases, where not already settled by law, perhaps additional legislation would be desirable.

"From a review of the entire past legislation of congress, on the subject under consideration, our conclusion is, that the practice, pleadings, and forms and modes of proceeding of the territorial courts, as well as their respective jurisdictions, subject, as before said, to a few express or implied conditions in the Organic Act itself, were intended to be left to the legislative action of the territorial assemblies, and to the regulations which might be adopted by the courts themselves. * * * *"

And in the case of *Reynolds v. The United States*, 98 U. S. 145, Mr. Justice Waite, in expressing the opinion of the court, uses this language:

"By section 1910 Rev. Stat. the district courts of the territory have the same jurisdiction in all cases arising under the Constitution and laws of the United States, as is vested in the circuit and district courts of the United States; but this does not make them circuit and district courts of the United States. We have often so decided. *American Insurance Co., v. Canter,* 1 Pet. 511; *Benner et al v. Porter,* 9 How. 235; *Clinton v. Englebrecht,* 13 Wall. 434.   They are courts of the territories, invested for some purposes with the powers of the courts of the United States.   Writs of error and appeals lie from them to the supreme court of the territory, and from that court as a territorial court, to this in some cases.

"Section 808 was not designed to regulate the impanelling of grand juries in all courts where offenders against the laws of the United States could be tried, but only in the circuit and district courts. This leaves the territorial courts free to act in obedience to the requirements of the territorial laws in force for the time being. *Clinton v. Englebrecht, supra; Hornbuckle v. Toombs,* 18 Wall. 648. * *"

In the case of *Thiede v. Utah Territory,* 159 U. S. 510, Mr. Justice Brewer in speaking for the court says:

"By section 1033, Rev. Stat. the defendant in a capital case is entitled to have delivered to him at least two entire days before the trial a copy of the indictment and a list of the witnesses to be produced on the trial. *Logan v. The United States,* 144 U. S. 263, 304. But this section applies to the circuit and district courts of the United States, and does not control the practice and procedure of the courts of Utah, which are regulated by the statutes of that territory. This question was fully considered in *Hornbuckle v. Toombs,* 18 Wallace 648, and it was held, overruling prior decisions, that the pleadings and procedure of the territorial courts, as well as their respective jurisdictions were intended by congress to be left to the legislative action of the territorial assemblies and to the regulations which might be adopted by the courts themselves. See also *Clinton v. Englebrecht,* 13 Wallace, 434, in which it was held that the selection of jurors in territorial courts was to be made in conformity to the territorial statutes; *Good v. Martin,* 95 U. S. 90, in which a like ruling was made as to the competency of witnesses; *Reynolds v. United States,* 98 U. S. 145, where the same rule was applied to the impanelling of grand jurors and the number of jurors; also *Miles v. United States,* 103 U. S. 304, a case from the Territory of Utah, in which the same doctrine was announced with regard to the mode of challenging petit jurors. Referring, therefore, to the territorial statutes, there is none which directs that a list of

the witnesses be furnished to the defendant. Section 4925, Comp. Laws of Utah, requires that the name of witnesses examined before the grand jury be endorsed on the indictment before it is presented. There is no pretense that this direction was not complied with. In the absence of some statutory provision there is no irregularity in calling a witness whose name does not appear on the back of the indictment or has not been furnished to the defendant before trial. * *"

Now if the contention of plaintiff in error was correct, that in the trial of this case the procedure prescribed by the United States statute in United States circuit and district courts prevailed, then his contention would also be correct, that before the defendant could be put upon trial he should have been served with the names of the jury and witnesses; but, if on the other hand, the procedure of the Territory is in force and prevails, then the only provision of the criminal procedure act of the Territory is that the defendant shall be furnished with a copy of the indictment, and that the names of the witnesses should be endorsed upon the back of the indictment. This there is no contention was not done. And we think under the authorities cited, that the latter proposition is true, and that the procedure of the Territory in the trial of this class of cases prevails.

And here we might discuss another assignment of error, to wit, a portion of the sixth, wherein the plaintiff in error complains that the court permitted the United States attorney to endorse upon the back of the indictment, witnesses, and to immediately put them upon the stand against the defendant, which, plaintiff in error claims is a violation of section 1093 of the Revised Statutes of the United States. We think that the decision of the third assignment of error

fully answers this assignment of error, and that this practice is universally recognized as being the proper practice in the trial of criminal cases in this Territory; that it is within the sound discretion of the court to allow the endorsement of names on the back of the indictment, on the furnishing of a copy of the names to the counsel for the defendant.

The fourth assignment of error is:

"The court erred in not permitting the plaintiff in error to exercise all the peremptory challenges to the jury, as is by the laws of the United States allowed in capital cases."

This assignment of error is based upon the same procedure as the previous one, that is, that the laws of the United States as to procedure and practice govern in the trial of this class of cases. The record shows that nine peremptory challenges were allowed to the defendant, which is strictly in accordance with the provisions of the criminal procedure act of this Territory, and the challenge which was refused was after the nine challenges had already been used; hence we think there was no error in this.

It is also contended by counsel that the trial court erred in the admission and rejection of testimony, and the particular pages of the record are cited in support of this contention. We have examined these pages of the record, and we do not think that any prejudicial error was committed in the rejection of testimony, as the record shows that most of the testimony rejected was on the ground that it was a repetition. Objection is also made by plaintiff in error to some remarks of the court, which remarks were as follows:

"Question asked witness: Why is it that you can tes-

tify positively as to the flowers on the belt, and the age of the belt, and can't tell anything about the color of the dress?"

"Objected to as immaterial, which objection was by the court sustained, and to which ruling of the court the defendant at the time excepted."

"By the Court: While I might meet a man on the street and I couldn't tell whether he had black clothes or white clothes on, yet it is the matter of general impression frequently that impresses one rather than details; and he has testified now that the person had a dress on and bonnet on and had a belt on. These facts might have impressed the witness, while the particular size of the flowers on the belt, or the particular shape of it might not have impressed him; or the particular figure upon the dress might not have impressed any one, and the main fact here to be determined is, what the dress was, and what the party looked like, and what his appearance was as a matter of identification, and the witness has not shown any lack of memory on these things, that would be necessary to go into a detailed cross-examination on some immaterial matters, or state whether he had any recollection on the general subject or not?"

We don't think that these statements of the court could have in any manner, prejudiced the jury against the interests of the defendant. They were simply made in the nature of an explanation of the ruling of the court in sustaining the objection to the cross-examination by defendant's counsel. The plaintiff in error also calls attention to the fact that on pages 165 and 166 of the record, it is shown that the court admitted evidence that tended to connect the plaintiff in error with Ben Cravens, a notorious outlaw, and one for whom a great reward was offered, dead or alive, and

that transaction was several days after the defendant had been in custody, and that the transaction occurred in Pawnee county, and could not be any part of the *res gestae* in this case, as the offense charged took place in Noble county, and plaintiff in error's arrest took place in Noble county, and contends that the admission of such evidence was in conflict with the principles laid down in the case of *Drury v. The Territory*, 9 Okla. 411. We have examined these pages of the record and the testimony as therein shown, and we find that on the admission of this testimony it was distinctly stated by the court to the jury, that this evidence was only admitted for the purpose of identification, or to identify the defendant, Welty, with the transaction, at the time of the commission of the crime, and the court informed the jury at the time of the admission of this testimony that it must not be considered for any other purpose. We think this is the only safe practice the court could indulge in; if testimony was competent for that purpose, only, and incompetent for all other purposes, we think it was the correct practice, and we do not think the admission of this testimony, under this direction and admonition of the court, to the jury, could have worked any hardship or injustice to the defendant, or could have been in any manner prejudicial to his rights, and particularly is this true, when, after this admonition to the jury at the time of the admission of the testimony, the court subsequently, in instruction No. 18, again distinctly calls the attention of the jury to the purpose for which this testimony was admitted, and warns them against considering it for any other purpose.

The plaintiff in error complains of the fourth instruc-

tion given by the court in this case. That instruction attempts to define the crime of murder, and gives the definition as it existed under the common law.

In the case of *Axhelm v. The United States,* 9 Okla. 321, which was an appeal from the district court of Noble county, where the defendant had been indicted, tried and convicted of the crime of assault with intent to rob, in the Otoe and Missouri Indian Reservation, this court, speaking by Justice Burwell, says:

"It is true that congress had not defined the meaning of the word "rob" or "robbery" but that was not necessary, for it is an elementary rule in construing a statute containing words which have a fixed meaning at common law, and the statute nowhere defines such words, that they will be given the same meaning they have at common law, and so far as we have been able to find, there are no exceptions to this rule."

This language of our court seems to meet the objection raised by plaintiff in error to this instruction. As plaintiff in error's counsel say in their brief, the United States statute does not define murder, and he reasons that therefore it was improper for the court to give any other definition than that given by Statute of Oklahoma, but our supreme court in the case above cited seem to adopt the rule that where words have a fixed meaning at common law, and the statute nowhere defines such words, that they shall be given the same meaning they have at common law. Now we think that it cannot be gainsaid that the word murder at common law has a fixed and well known meaning. This court also had occasion to discuss this question at some length in an-

other case, that of *Hughes v. The Territory,* 8 Okla. 28, 56 Pac. 708, where this court says:

"There are no common law crimes against the United States; yet the acts of congress instead of minutely defining particular crimes, often make it penal, for example, to commit robbery or arson, etc., employing words of well known common law meaning. In such case the court looks to the common law to ascertain the nature and limits of the offense."

We think these authorities are a sufficient answer to the objection, not only to the fourth instruction, but also to the seventh, eighth and ninth, which are on the same line.

The plaintiff in error also complains of the tenth instruction given by the court. The objection to the tenth instruction, is that, according to the contention of the plaintiff in error, it tends to define an accessory before the fact to murder, when there is no such crime under the United States statute. We think an examination of this instruction will show, by a reasonable interpretation of the language, that the trial court did not instruct the jury as to what would constitute an accessory before the fact, but only explained to the jury what was necessary to be proven to constitute the defendant a principal, when it was not proven he fired the fatal shot, and we think this instruction is a fair statement of the correct rule of law. The only other instruction complained of by plaintiff in error in his brief is the eighteenth, and this instruction we think cannot be construed as to have in any way affected any substantial right of the defendant. In this instruction the court simply reiterates and repeats to the jury the admonition as given to them when the testimony in regard to Ben Cravens was admitted, and again informs them that this testimony is

only admitted for the purposes of identification, and express-
ly instructs the jury that they shall disregard it for all
other purposes. This instruction, under its strictest con-
struction, would be rather in the interest than against the
interest of the defendant.

The last contention of the counsel for the plaintiff in
error is that the judgment in this case is void, for the reason
that the record fails to show that the plaintiff in error had
been sentenced to "hard labor." As to this contention it
will be seen by examination of the case made that this ques-
tion was not presented to the trial court on the motion for
a new trial, and under the well recognized rule of this court,
that errors occurring on the trial cannot be considered or
reviewed by this court unless they are saved by being in-
corporated into a motion for a new trial, this assignment
of error cannot be considered.

After carefully examining the entire record, believing
that practically a fair and impartial trial has been had,
that no substantial right has been denied the defendant, and
that no substantial prejudice has been done, the judgment
of the lower court is affirmed.

Burford, C. J., who presided in the court below, not
sitting; Hainer, J., who made some of the orders in the
case, taking no part in this decision; all the other Justices
concurring.