YOUNG et al. v. UNITED STATES.

(Circuit Court, W. D. Oklahoma. January 10, 1910.)

No. 243.

*(Syllabus by the Court.)*

1. INDIANS (§ 27*) — INDIAN ALLOTMENTS — JURISDICTION OF TERRITORIAL COURTS.

 The district courts of the territory of Oklahoma had jurisdiction of suits brought therein by persons of Indian blood or descent to establish their rights to allotments, pursuant to Act Cong. Aug. 15, 1894, c. 290, 28 Stat. 305, and Act Cong. Feb. 6, 1901, c. 217, 31 Stat. 760.

 [Ed. Note.—For other cases, see Indians, Dec. Dig. § 27.*]

2. ACTION (§ 42*)—SEPARATE ALLOTMENTS—ACTION TO ESTABLISH—PROCEDURE —TERRITORIAL CODE.

 Where several claimants of allotments sued jointly to establish their rights to separate allotments in a district court of the territory of Oklahoma, a demurrer to their petition was properly sustained by said district court, where one of the grounds of the demurrer was a misjoinder of causes of action.

 [Ed. Note.—For other cases, see Action, Dec. Dig. § 42.*]

3. COURTS (§ 431*)—PROCEDURE—IN CIRCUIT COURT AFTER ADMISSION OF STATE.

 Where an appeal was taken from a judgment of dismissal in such case to the Supreme Court of the territory, and the appeal, being undetermined on the admission of the state, was thereafter transferred to a federal Circuit Court, which by the enabling act (Act June 14, 1906, § 16, c. 3335, 34

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Stat. 276, amended by Act March 4, 1907, c. 2911, 34 Stat. 1286) was vested with the powers of such Supreme Court, the judgment should be affirmed by the Circuit Court, if it should have been affirmed by the Supreme Court, under the territorial Code of Procedure.

[Ed. Note.—For other cases, see Courts, Dec. Dig. §. 431.*]

4. COURTS (§ 431*)—PROCEDURE IN FEDERAL COURT—DISMISSAL—JUDGMENT.
Where in such a case the federal Circuit Court affirms a judgment of the territorial district court, and the original petition is multifarious, as tested by the rules of equity pleading which obtain in the federal courts, the judgment of dismissal should be without prejudice to the prosecution of future separate suits by the parties plaintiff in the case.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 431.*]

Appeal from the District Court of Canadian County, Territory of Oklahoma.

Action by Rebecca Young and others against the United States. Judgment for defendant, and plaintiffs bring error. Affirmed.

Blake, Blake & Low and F. E. Riddle, for plaintiffs in error.
John Embry, U. S. Atty., and John W. Scothorn, Asst. U. S. Atty.

COTTERAL, District Judge. This case was commenced in the district court of Canadian county, in the territory of Oklahoma, by several plaintiffs, who by their joint petition against the United States as sole defendant sought to establish their alleged rights as Caddo Indians to allotments of land in the reservation of the Wichita and affiliated bands of Indians, in the territory, as provided by the treaty with them, which was ratified by Act Cong. March 2, 1895, c. 188, 28 Stat. 895. The plaintiffs brought the suit jointly, some of them for themselves and their children and others for themselves alone, as follows: Rebecca Young, for herself and two minor children; Matilda Fullbright, daughter of Rebecca Young, for herself and six minor children; Joe Stevenson, son of Rebecca Young, for himself and four minor children; Mary Chambers, daughter of Rebecca Young, for herself and minor son; Rosa Figures, daughter of Rebecca Young, for herself and two minor children; Mandie Harmon, daughter of Rebecca Young, for herself and four minor children; George, Robert, and Edward Stevenson, sons of Rebecca Young, for themselves. It is alleged that Rebecca Young was born in the Caddo Tribe in Louisiana, and is a half blood Caddo Indian, and that each of her said children is a quarter blood, and each of their children a one-eighth blood Caddo Indian. It is also alleged that selections of land were made by or for each of these claimants, adults and minors, as and for their allotments, descriptions of the several tracts, according to government survey, being set out; and the relief demanded is that each of them be declared entitled to the allotment thus selected and described.

The record shows that the probate judge of Canadian county, in the absence of the district judge, enjoined the register and receiver of the United States Land Office at El Reno from receiving homestead ap-. plications for these lands, and that this order was later modified by the district court so that these land officers were enjoined from permitting filings for the lands "unless the party making such filing be advised

of the pendency of the action and a receipt given to the entryman, reciting that said filing is made subject to the rights of the plaintiff herein, as the same may be determined by the court or on appeal." A demurrer to the petition was filed and sustained. Afterward, upon leave given, an amended petition was filed, to which also a demurrer was interposed and sustained. The record, however, fails to show upon what ground or grounds of this demurrer the ruling was made. The plaintiffs again asked leave to amend their petition, but the application was refused. Thereupon the action was dismissed, with costs, and the injunction dissolved. From the judgment thus rendered the plaintiffs perfected an appeal to the Supreme Court of the territory. The appeal, being there undetermined on the admission of the state, was transferred to this court, pursuant to section 16 of the statehood enabling act, approved June 14, 1906 (chapter 3335, 34 Stat. 276), and amended by Act March 4, 1907, c. 2911, 34 Stat. 1286. By the terms of that section this court is invested with the powers of the territorial Supreme Court. Three of the grounds set forth in the latter demurrer appear to be relied upon by the defense and have been argued on this appeal, as follows: (1) Want of jurisdiction of the court over the subject-matter of the action; (2) misjoinder of causes of action; (3) failure to state facts sufficient to constitute a cause of action.

The objection made to the jurisdiction of the territorial district court will be first considered. The suit was brought by the plaintiffs upon the authority of Act Cong. Aug. 15, 1894, c. 290, 28 Stat. 305, and Amendment Feb. 6, 1901, c. 217, 31 Stat. 760, which authorize suits in the Circuit Courts of the United States to determine the rights of allotment claimants of Indian blood or descent before the government has parted with the title to the lands claimed. The defense insists that the jurisdiction conferred by this legislation was not given to the territorial courts for the reason that they were limited by the organic act of the territory of May 2, 1890, to the jurisdiction then existing in the federal courts. The organic act (section 9) provides that the Supreme and district courts of the territory "shall possess chancery as well as common-law jurisdiction, and authority for redress of all wrongs committed against the Constitution or laws of the United States or of the territory affecting persons or property," and, further, that:

"Each of said district courts shall have and exercise, exclusive of any court heretofore established, the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States."

The general chancery and common-law jurisdiction thus referred to does not affect the question for the reason that no court, state or federal, ever had any jurisdiction to investigate or determine these cases of contested allotments, in the absence of the special legislation contained in the act of 1894, and the amendment thereto. Hy-yu-tu-milkin v. Smith, 194 U. S. 413, 24 Sup. Ct. 676, 48 L. Ed. 1039; McKay v. Kalyton, 204 U. S. 458, 27 Sup. Ct. 346, 51 L. Ed. 566; Sloan v. U. S. (C. C.) 118 Fed. 283. Hence the real inquiry is whether the other provision of the organic act above quoted vested in the territorial

courts the jurisdiction thereafter given to the federal Circuit Courts in these allotment cases.

In the view of this court, the argument that Congress intended to limit the federal jurisdiction of the territorial courts to its scope as it existed on May 2, 1890, when the organic act was adopted, cannot be accepted. It overlooks the general principle that statutes should be so interpreted and construed as to give effect to the intention of the lawmaking power. It seems quite plain that it was the purpose of Congress to give to the inhabitants of the territory the same right of litigation as might be accorded from time to time to litigants in the federal courts in the states. There was every reason why this should be .done, and particularly in favor of persons of Indian blood or descent, who were well known to be so numerous in the territory and who were naturally and necessarily bound to remain therein. The language used in the organic act does not exclude this reasonable interpretation which it ought to receive under the conditions existing and to continue in the territory. It is to be noted that the reference to "cases" is to those "arising," meaning, of course, those to arise in the future. And the expression "as is vested in the Circuit and District Courts" likewise means at the time when they might arise in the future. The present tense employed in defining the jurisdiction plainly refers to future conditions and the jurisdiction then to exist whether at such time it should be enlarged or diminished by Congress. The territorial district court therefore had jurisdiction of the suit.

The ground of demurrer based on a misjoinder of causes of action necessitates a consideration of the procedure applicable to the case. This court in determining this appeal, as already stated, is vested with the powers of the territorial Supreme Court, which, in a case involving procedure, was governed by the Civil Code of Procedure of the territory. It was long ago settled that the territorial courts are not federal courts, and that the procedure obtaining in them is that prescribed by the territorial Legislature. Clinton v. Englebrecht, 13 Wall. 434, 20 L. Ed. 659; Hornbuckle v. Toombs, 18 Wall. 648, 21 L. Ed. 966; Good v. Martin, 95 U. S. 90, 24 L. Ed. 341; Reynolds v. U. S., 98 U. S. 145, 25 L. Ed. 244; Thiede v. U. S., 159 U. S. 510, 16 Sup. Ct. 62, 40 L. Ed. 237; Welty v. U. S., 14 Okl. 7, 76 Pac. 121. In the Code of the territory the following provisions are found:

"All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article." Wilson's St. 1903, § 4233; Snyder's Comp. Laws 1909, § 5567.

"Of the parties to the action those who are united in interest must be joined as plaintiffs or defendants," etc. Wilson's St. 1903, § 4235; Snyder's Comp. Laws 1909. § 5569.

These sections have been frequently construed by the Supreme Court of the territory of Oklahoma and of the state of Kansas, whence they were taken. According to the holdings of both courts, the petition of the plaintiffs in this suit, tested by the foregoing limitations, includes causes of action which are improperly joined. It is true that one averment common to all of the plaintiffs is that pertaining to the Indian blood of Rebecca Young, but they have no unity of interest in the lands involved, and the demand for relief is separate and distinct on the part

of each plaintiff as to a particular tract claimed. The joinder of such claims was clearly not permissible under the territorial Code. Jeffers v. Forbes, 28 Kan. 174; Hurd v. Simpson, 47 Kan. 372, 27 Pac. 961; Weber v. Dillon, 7 Okl. 569, 54 Pac. 894. In the case of Jeffers v. Forbes, supra, the following is quoted from Tate v. Railroad Co., 10 Ind. 174, 71 Am. Dec. 309:

"Two or more persons, having separate causes of action against the same defendant, though arising out of the same transaction, cannot unite; nor can several plaintiffs in one complaint demand several distinct matters of relief; nor can they enforce joint and separate demands against the same defendants."

Another provision of the territorial Code is contained in section 4296, Wilson's St. 1903, and Snyder's Comp. Laws 1909, § 5632, and is as follows:

"When a demurrer is sustained on the ground of misjoinder of several causes of action, the court, on motion of the plaintiff, shall allow him, with or without costs, in its discretion, to file several petitions, each including such of said causes of action as might have been joined, and an action shall be docketed for each of said petitions, and the same shall be proceeded in without further service."

It has been the practice under this statute on appeal, where a misjoinder of causes of action appeared in the pleading, to remand the case with directions to permit the plaintiffs to file separate petitions and proceed thereon. See cases last cited. However, the territorial courts have ceased to exist, and, in view of that fact, the question is presented as to the proper disposition of the case by this court. The enabling act provides:

"Cases transferred from appellate courts shall go to the Circuit Courts of the United States in such state, which courts, for the purpose of hearing such cases, are hereby vested with all the powers of such territorial appellate courts. If the Circuit Court shall affirm the judgment, it shall, if the case be one then originally cognizable in the district court, remand it to that court for carrying into effect the judgment of the trial court; but if the case be one then originally cognizable in the Circuit Court, it shall carry into effect the judgment of the trial court. If the Circuit Court shall reverse the judgment, it shall, if the case be one then originally cognizable in the district court, remand the case to that court for a new trial; but if the case be one then originally cognizable in the Circuit Court, it shall set the case down for a new trial therein."

The judgment of the territorial district court must be affirmed. In such a case this court is authorized to "carry into effect the judgment of the trial court." That judgment dismissed the case, with costs against the plaintiffs. But this court is also vested with the powers of the territorial Supreme Court, which, as stated, included the authority to permit a further prosecution of these suits agreeably to the procedure applicable thereto. However, the same could be carried on only in this court, in the exercise of its equity jurisdiction, because suits to establish allotments are equitable in character, and since the admission of the state the federal Circuit Courts alone therein can take cognizance of them. Reading the provisions of the enabling act together, it would seem that, in the interest of justice, this court might retain the case, if, embracing the various causes of action which have been joined, it can be proceeded with in this court.

It is to be determined, then, whether the petition now before the court is multifarious, under the rules which obtain in equity, in a Circuit Court of the United States.

It may be premised that there is not any positive or universal rule as to what constitutes multifariousness, and that it must often be determined by the nature of the case in which objection is made on this ground. Shields v. Thomas, 18 How. 253, 15 L. Ed. 368; Brown v. Guarantee Trust Co., 128 U. S. 410, 9 Sup. Ct. 127, 32 L. Ed. 468; Harrison v. Perea, 168 U. S. 319, 18 Sup. Ct. 129, 42 L. Ed. 478.

In Story's Equity Pleading, § 271, the text reads:

"By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them, as, for example, the uniting, in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill."

And in section 539 of the same work it is said:

"All that can be done in each particular case as it arises, is to consider, whether it comes nearer to the class of decisions where the objection is held to be fatal, or to the other class, where it is held not to be fatal. And in new cases, it is to be presumed that the court will be governed by those analogies, which seem best founded in general convenience, and will best promote the due administration of justice, without multiplying unnecessary litigation on the one hand, or drawing suitors into needless and oppressive expenses on the other."

For the plaintiffs the principal contention is that they have a common interest, and that a common question is involved, to be determined by the same legal rule, and upon similar facts, wherefore they seek to justify the course which was adopted of uniting these various claims in one suit. Various authorities are cited which are supposed to sustain their position. But it is believed that the holdings relied upon are predicated on different facts to an extent that they cannot be considered as decisive of the question here involved. They cite Story's Eq. Pl. § 285, where it is said:

"Another exception to the general doctrine respecting multifariousness and misjoinder, which has already been alluded to, is where the parties (either plaintiffs or defendants) have one common interest touching the matter of the bill, although they claim under distinct titles, and have independent interests. The cases respecting rights of common, where all the commoners may join, or one may sue or be sued for all; of parishioners to establish a general modus; or of a parson to establish a general right of tithes against parishioners; and others of a like nature, already stated under another head, fully exemplify the doctrine, for in all of them there is a common interest centering in the point in issue in the cause."

The text well illustrates the difference between cases in which parties have been authorized to sue jointly and the case at bar. Here there is no "common interest touching the matter of the bill," each of the plaintiffs seeking distinctive relief; in fact, a separate decree as to his right and title to specific real property, which is quite dissimilar to the claim of commoners, parishioners, and like persons, with a common interest at stake. Referring to the joinder and confounding of distinct and independent matters, Mr. Justice Story further says, in section 271:

"In the former case the defendant would be compellable to unite in his answer and defense different matters wholly unconnected with each other, and thus the proofs applicable to each would be apt to be confounded with each other, and great delays would be occasioned by waiting for the proofs respecting one of the matters, when the others might be fully ripe for hearing. Indeed, courts of equity in cases of this sort are anxious to preserve some analogy to the comparative simplicity of proceedings at the common law, and thus to prevent confusion in their own pleadings, as well as in their own decrees."

And in section 533:

"The result of the principles to be extracted from the cases on this subject seems to be that, where there is a common liability and a common interest, a common liability in the defendants and a common interest in the plaintiffs, different claims to property, at least if the subjects are such as may without inconvenience be joined, may be united in one and the same suit."

In 1 Daniell's Chancery Pl. & Pr. pp. 344–346, it is said:

"It thus appears that a plaintiff cannot join in his bill, even against the same defendant, matters of different natures, although arising out of the same transaction. * * * As a bill by the same plaintiff against the same defendant for different matters would be considered multifarious, so, a fortiori, would a bill by several plaintiffs, demanding distinct matters, against the same defendants. Thus, if an estate is sold in lots to different purchasers, the purchasers cannot join in exhibiting one bill against the vendor for a specific performance; for each party's case would be distinct, and there must be a distinct bill upon each contract."

The foregoing principles may be properly applied to this case. It will not be necessary to examine the various authorities cited in behalf of the plaintiffs. The facts there involved are essentially different. In this case, for various reasons, the bill is multifarious, both as to subject-matters and as to parties. No one of them is interested in the success of the other. They sue jointly to establish their rights to individual allotments. The burden is on each of them to show membership in the Wichita or an affiliated band of Indians, and, furthermore, a right to a specific tract selected, agreeably to a treaty and an act of Congress. A right to an allotment is called for and as well a right to a tract claimed. The right of all may have origin in Rebecca Young, but that does not make out the right asserted. Other requirements condition the right to the allotment. Some of the plaintiffs may succeed and others fail. The investigation of each claim in various ways must necessarily take a separate course both as to the right to an allotment and the land claimed. The practice of prosecuting separate suits was adopted in Sloan v. United States (C. C.) 118 Fed. 283. That course is believed to be imperatively demanded of these plaintiffs, no adequate grounds appearing for the joint investigation and trial of the divergent issues which must arise upon their several demands for relief.

The conclusion thus reached renders unnecessary a consideration of the sufficiency of the averments of the petition to warrant a decree in favor of any of the plaintiffs. The merits of the claims of these parties may be decided when and if they are appropriately presented in separate bills, as they are lawfully entitled so to do.

The judgment of the District Court of Canadian county, of the territory of Oklahoma, dismissing the action, will be affirmed, with costs

on appeal, but, in order that the plaintiffs may not be denied a right to prosecute their claims, it will be adjudged that the dismissal of the action be without prejudice to future prosecution of separate suits by the parties plaintiff in this case.